IN THE MATTER OF THE ESTATE OF McCUNE, HOLLIDAY, *Administrator, Appellant.*

1.   **Administrator, Appeal by.** An administrator may maintain an appeal from an order of payment on the ground that it lays down a rule of apportionment which works injustice as between the creditors of the estate.

2.   **Administration:** APPORTIONMENT OF ASSETS: INTEREST: SECURED CREDITORS. The assets of an insolvent decedent's estate are to be apportioned among the creditors in proportion to the amounts due them severally at the date of apportionment, and for the purpose of ascertaining these amounts, interest on the several allowances to that date must be taken into account; and if there are secured creditors, any sums which they may have realized on their securities since obtaining their allowances must be deducted.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This was an appeal taken by Samuel N. Holliday, administrator of the estate of John S. McCune, deceased, from an order of payment made by the probate court of the city of St. Louis. The facts of the case, about which there was no dispute, were made known to the probate court by a report of the administrator, in which he prayed the court to declare a dividend, and were substantially as follows: The administrator had in his hands assets to the amount of $124,000, while demands had been allowed in the fifth class to the amount of $247,000. These bore interest at different rates, some ten, some eight and some six per cent, and the interest amounted in the aggregate to $84,000. Several of the creditors, at the time of proving their demands, held real and personal securities, but had since realized. As to the basis of distribution the report contained the following suggestions:

1.   It is claimed by some of the said creditors, that this court should declare a dividend on the face of the respective claims, as allowed, without regard to any payments

that have been received from the proceeds of the sales of collaterals, not exceeding the balance due in any case, and without regard to the rate of interest borne by the claims respectively.

2. It is claimed by other creditors, that the interest borne by the claims shall not be regarded until the face of said claims shall have been paid in full, but that the claims which have been partly paid from the proceeds of sales of collaterals or deeds of trust, shall first be diminished by said respective payments, and the dividend declared on the balance of the said claims.

3. It is further claimed by others of said creditors, that this court shall declare the dividend on the aggregate amounts due each creditor at the day that the dividend shall be declared, deducting from claims all that has been received thereon respectively from sale of collaterals or proceeds of sales under deeds of trust, and adding interest to date of dividend declared, at the rate borne by each claim.

4. It is further claimed by at least two creditors, that this court should declare the dividend on the aggregate amount due each creditor, principal and interest, on the day the dividend is declared, without deducting from said claims any sums received after they were allowed, from proceeds of sales of deeds of trust or collaterals.

The probate court having considered this report ordered the administrator to pay fifty per cent on the face of all the fifth class claims without reference to the interest borne by said claims respectively, and without regard to any amounts that had been paid on said claims, or any of them, from the proceeds of sales of collaterals or deeds of trust, since said claims were allowed, not exceeding, however, the balance due on any claim. From this order, the administrator appealed successively to the circuit court and the St. Louis court of appeals, by both of which courts the judgment of the probate court was affirmed.

*Dryden & Dryden* for appellant.

1. It is the amount of a demand, and not the face of a demand, that, in respect to such demand, furnishes the lawful basis for the apportionment of assets of a decedent's estate among creditors. Wag. Stat., p. 105, § 29; Ib., p. 109, § 11. These sections of the statute provide not that the demands shall be paid and the assets be apportioned in proportion to the faces of the "demands, but in proportion to their amounts." The face of a demand is one thing and the amount of a demand is another and a totally different thing. The face of the demand in the sense of the order appealed from, is the sum which was due at the moment of the allowance; the amount of the demand in the sense of the statute governing apportionments is what is due, whether more or less than the face, at the time of the apportionment. Accrued interest is an integral part of all demands resting in judgment. Wag. Stat., 783, § 3. The law so much regards interest as part of the creditor's demand, that, in case of partial payment, it will apply such payment to the interest first, in the absence of direction by the parties. *Riney v. Hill,* 14 Mo. 500; *Johnson v. Johnson,* 5 Jones Eq. 167. The judgment creditor has the same right to have satisfaction of his interest, by " sale of property," as he has in respect to the principal.

Every one is entitled to the benefits and advantages of his contracts lawfully made. A contract for ten per cent interest is lawful, and is of greater value (all other conditions being equal) than a contract for six per cent interest. To apportion the assets of an insolvent estate among creditors whose demands thus bear different rates of interest, in the proportions which the principal only of the several demands bear to each other, is to rob the better contract of its lawful benefits and advantages, and to reduce it to a level with its inferiors, a power possessed by no court. The face rule not merely robs the creditor of

the legitimate benefits of his contract, but it gives rewards to the negligent, and administers stripes to the diligent. That is to say, as he who longest delays proving up his claim, thereby procures the incorporation of the largest amount of interest in his allowance, he stands on a better footing than he who has proved up earlier.

2. A debt which has been partially paid, insofar as it has been thus paid, is not legally the object of an apportionment of assets of a decedent's estate. (a) They are required by law to be apportioned to the demands entitled to participate therein, "in proportion to their amounts." §§ 29, 11, *supra*. (b) The sum which the creditor is actually entitled to be paid on his demand—not some fictitious or fancied amount—but the real amount payable, is the sum which the statute, in terms, prescribes as the amount to which the apportionment must be made. (c) The legal and logical result of the partial payment of these allowances by the sale of securities, was the extinguishment of the debt *pro tanto*, and the destruction of the relation of creditor and debtor between the claimants and the administrator, as respects so much of the debt as was thus paid. If the debts were extinguished *pro tanto*, and the relation of creditor and debtor was destroyed, as supposed, then it follows, necessarily, that thereafter the demands, so partially paid, consisted, and could only consist, of the balance remaining unpaid. That balance constituted the amount of the creditor's claim and the amount entitled to apportionment. (d) As the secured creditors had not realized on their securities at the time of proving their debts, they had the right to prove for the full amount. But if they had sold the securities, there is no doubt they could only have proved for the balance due them. (e) If the effect of the application of the proceeds of collaterals to the partial payment of the secured debt before allowance be to extinguish the debt *pro tanto*, and to limit the creditor to the allowance of the balance merely, and hence to the receipt of dividends on such balance only, by what logic will the

application of such proceeds, after allowance, be held to have any other or different effect ? In both instances, payment is the thing accomplished—payment of the same debt—payment, too, from the same source. The only difference being, a difference in time.

*Glover & Shepley* and *A. J. P. Garesche* for the secured creditors.

At common law the creditor has the right to rely upon all the funds he has for payment of his whole debt, and until that is paid from some source, to resort to all sources for its payment, and this rule is not altered by the fact that the debtor dies insolvent. *Mason v. Brayg,* 2 My. & Cr. 448, (overruling *Greenwood v. Taylor,* 1 Russ. & Myl. 185 ;) *Rome v. Young,* 1 Yo. & Col. 204; 1 Story Eq. Jur., (11 Ed.) p. 665, § 633 ; *Moses v. Ranlett,* 2 N. H. 488; *Loomis v. Farnum,* 14 N. H. 120 ; *West v. Bank of Rutland,* 19 Vt. 403 ; *Shunk's Appeal,* 2 Pa. St. 304; *Bair & Shenk's Appeal,* 1 Norris (Pa.) 113 ; *Findlay v. Hosmer,* 2 Conn. 350; *Clarke v. Henshaw,* 30 Ind. 146; *Miller's case,* 82 Pa. St. 114 ; *s. c.,* 22 Am. Rep. 754; *Jervis v. Smith,* 7 Abb. Pr. (N. S.) 217; *Mason's Appeal,* 89 Pa. St. 404; *Morton v. Caldwell,* 3 Strobh. Eq. 166 ; *Midgely v. Slocomb,* 2 Abb. Pr. (N. S.) 275. Nothing in our statute changes this rule.

2. The administrator not being a party aggrieved, had no right to appeal. For whether the one rule or the other be adopted, he was not in his estate or pecuniary interest affected to the extent of one dime. Nor does it in the slightest degree increase or diminish the estate itself. It is a matter in which the creditors holding demands in the fifth class are alone interested. *Deering v. Adams,* 34 Me. 41 ; *Idley v. Bowen,* 11 Wend. 227; *Reed v. Vanderheyden,* 5 Cow. 719 ; *Kelly v. Israel,* 11 Paige 147 ; *Fairbanks v. Corlies,* 3 E. D. Smith 582 ; *Stineman's Appeal,* 34 Pa. St. 395 ; *Sharp's Appeal,* 3 Grant (Pa.) 261; *Cuyler v. Moreland,* 6 Paige 275 ; *Pearson v. Farrington,* 32 Ala. 275 ;

*Veazie v. Young*, 53 Me. 560; *Downing v. Porter*, 9 Mass. 386; *Combs v. Jefferson, etc., Co.*, 3 Met. (Ky.) 74; *Lawless v. Reagan*, 128 Mass. 592; *Zumwalt v. Zumwalt*, 3 Mo. 269; *Overbeck v. Galloway*, 10 Mo. 367; *Asbury v. McIntosh*, 20 Mo. 280; *St. Louis Zinc Co. v. Hesselmeyer*, 50 Mo. 180; *Wells v. Zalle*, 59 Mo. 509; *Ames v. Gilmore*, 59 Mo. 542; *Kinealy v. Macklin*, 67 Mo. 95; *Mellon's Appeal*, 32 Pa. St. 131.

## I.

SHERWOOD, C. J.—No doubt is entertained of the right of the administrator to appeal in instances like the present. The statute is evidently broad enough in its evident scope and meaning to give such a right. 1 Wag. St., 119, § 1. The right under this section, has frequently been recognized by this court. *McCrary v. Menteer*, 58 Mo. 446; *Seymour v. Seymour*, 67 Mo. 303; *Hawkins v. Cunningham*, 67 Mo. 415; *Hainey v. Scott*, 28 Mo. 333. And it is quite immaterial, as regards this right of appeal, whether the administrator be personally aggrieved or not. It is seldom that he bottoms his appeal on the ground of the judgment of the probate court affecting him injuriously in his individual capacity. For the most part, he appeals, because in his opinion, the interests confided to his care have suffered detriment by reason of the judgment of the probate court. He represents each and all of the creditors and the whole of the estate, and should take all such steps as are necessary to prevent the interests placed in his hands from being damaged in consequence of improper orders being made regarding the estate of which he is the custodian and representative. In this sense, he is, by such an order, aggrieved in his fiduciary capacity, and may, therefore, appeal.

## II.

It may be conceded that the secured creditors had the unquestionable right to resort to their collaterals in pay-

ment of their debts, and still come in with the unsecured creditors in the division of the general fund or assets of the estate. But this concession does not militate against the view taken by counsel for the administrator. The statute provides, that "if there be not sufficient to pay the whole of any one class, such demands shall be paid in proportion to their amounts." 1 Wag. Stat., p. 105, § 29. And another section requires the probate court to apportion the money on hand "among the creditors according to the provisions of this law," and order the administrator to pay the respective claims "according to such apportionment." Ib., 109, § 11.

The question then arises : How is the money on hand to be apportioned when the secured as well as unsecured creditors come in and present their demands and call for their respective dividends thereon ?

The statute, it will be observed, makes no distinction between the two classes of creditors above mentioned, but requires payment to be made to them in proportion to the amounts of the respective demands. Now, the "amount" of a demand, it is almost superfluous to say, embraces the interest as well as the principal of such demand. Both principal and interest constitute, in the aggregate, the amount or sum total of that demand.

If there have been any payments made on the demand subsequently to the allowance thereof, as a matter of course, such payments must be credited on the demand, just the same as if a partial payment had been made on any other debt or claim whatsoever, and the same rule observed as in case of other partial payments. After this application of the partial payments has been made, in accordance with a very familiar rule, the demand thus reduced is to take rank and receive its dividend arising from insufficient assets, just as any other demand of equal amount, and be entitled to a similar *pro rata* payment. Any other construction than this, would clearly contravene the plain language and teachings of the statute and result in an

inequality of distribution which the statute neither contemplates nor tolerates.

In the case at bar, had the preferred creditors merely retained the collaterals in their hands without collecting the same—without receiving partial payments arising from the proceeds of such collaterals—possibly a different question might be presented, one not necessary to be now discussed, and which we must decline to discuss because *dehors* the facts presented by this record ; for here, the collaterals were collected before the order of the probate court, now complained of, was made. The effect of such collections, of such payments, was just the same, so far as concerns the reductions of the respective demands on which made, as if those collaterals had been collected prior to the allowance of those demands, instead of subsequently thereto. In a word, the conversion of the collaterals into cash as effectually reduces the debts they were given to secure in cases of this sort as in any other case whatsoever, for as between debtor and creditor the conversion of the security into money operates directly as payment so that the creditor can only go for the balance. *West v. Bank*, 19 Vt. 403.

For these reasons, judgment reversed and cause remanded. All concur.