JAMISON *v*. ADLER-GOLDMAN COMMISSION CO.

Opinion delivered Nov. 3, 1894.

1. *Administrator—Right to appeal.*

An administrator, in his representative capacity, is "a party aggrieved," and entitled to appeal from an order of apportionment, among the creditors, of money in his hands belonging to the estate of his intestate.

2. *Administration—Apportionment of assets—Secured creditors.*

The assets of an insolvent decedent's estate are to be apportioned among creditors of the same class in proportion to the amounts due them severally at the time of apportionment; and in ascertaining the amounts due to secured creditors, any sums realized by them on their securities since obtaining their allowances should be deducted.

Appeal from Jackson Circuit Court.

JAMES W. BUTLER, Judge.

*J. M. & J. W. Stayton* and *Morris M. Cohn* for appellant.

1. The administrator had the right to appeal. He was an interested party, and is the representative of creditors. 57 Ark. 232; 55 *id*. 232; 143 Mass. 234; 4 Rawle, 267; 1 Wins. (N. C.) 97; 3 Rand. (Va.) 479; 6 Metc. (Mass.) 194; 41 Ala. 274; 1 Paige, 270; 4 Johns. Ch. 199, note; 2 Woerner, Law of Adm. p. 1231; 30 Ark. 249.

2. The assets of the estate should have been apportioned on the basis of the amount *actually due* the appellee, and not on the amount of their claim as probated. The better doctrine is that creditors of an estate who hold securities must exhaust their securities, and then share *pro rata* on the actual balance due. 11 S. E. 394; 20 Can. S. C. 152; 16 Mass. 308; 54 Vt. 193; 1 Bush, 327; 25 Ark. 152; 29 *id*. 74; *Ib*. 440; Mansf. Dig. secs. 142 to 147; 2 Woerner, Adm. sec. 411, p. 864; sec.

485, p. 1107; 2 Brown, C. C. 125; 2 Dickens, 785; 31
Pac. 755; 11 Paige, 265; 1 Russ. & My. 185; 2 Rose,
63; 13 Iowa, 515; L. R. 12 Eq. 570; Schouler, Ex., sec.
430; 1 Pom. Eq. Jur. sec. 410; 1 Story, Eq. Jur. sec.
554; Schouler, Ex., sec. 430; 2 Woerner, Adm., sec. 495.
Sec. 102, Mansf. Dig., clearly requires that the appor-
tionment shall be made only on the amount *actually due.*

*Rose, Hemingway & Rose* and *Robert Neill* for
appellee.

1. The appeal should be dismissed. An adminis-
trator has no right to appeal from an order of distribu-
tion. He cannot be aggrieved. Hayne, New Tr. &
App., sec. 203, p. 613; Elliott, App. Pr. sec. 135; 40
Cal. 463; 49 *id.* 550; 58 Md. 86; 10 Md. 518; 31 Cent.
L. J. 332, note.

2. A creditor of an insolvent estate is entitled to
prove and receive a dividend on the full amount of his
debt, irrespective of any collateral securities he may
hold. 16 Mass. 308 is no longer authority. 2 N. H.
488; 47 N. W. 33; 82 Mich. 607; 15 R. I. 480; 22 Ore.
406; 18 B. Mon. 114; 78 Ky. 291; 118 Ill. 524; 79 Pa.
St. 146; 35 *id.* 481; 45 *id.* 151; 82 *id.* 113; 22 *id.* 441;
2 Conn. 350; 79 N. C. 244; 92 Tenn. 437. The doc-
trine contended for by appellant was at first sanctioned
in England in 1 Russ. & M. 185, but criticised and over-
ruled afterwards. 2 Mylne & C. 443-8; L. R. 3 Ch.
App. Cas. 769. See, also, 24 N. E. 793; 121 N. Y. 336;
31 Cent. L. J. 330, and note.

BATTLE, J. Charles W. Winfree, being indebted
to appellees in a large sum of money, conveyed to a trus-
tee certain lands belonging to him to secure the payment
of the debt. He failed to comply with the condition of
his deeds, and the lands became subject to sale to satisfy
the liens thereby acquired. After this he died, leaving
an insolvent estate. Debts were allowed against it in

the fourth class by the probate court to the amount of $17,534.15, among which were the claims of appellees for $9,544.41, which were secured by the deeds of trust executed by the deceased in his life time. These claims were proved and allowed on the 15th of July, 1890. After this the lands were sold to satisfy the deeds of trust, under a decree of a court of equity. The proceeds of the sale amounted to $6,020.50, and the costs of the foreclosure was $56, which, deducted from the amount of the sale, left $5,964.50, which were appropriated to the payment of appellees' claim, so far as it would extend. After this, on the 20th of July, 1892, on examination of the second annual statement of the administrator, the probate court found in his hands $3,268.05 for the payment of the debts allowed against the estate in the fourth class, and ordered that the claims of appellees be credited with the $5,964.50, leaving a balance of $4,335.58 due thereon; and directed the amount so found in the hands of the administrator to be distributed *pro rata* among the creditors holding the claims allowed in the fourth class, upon the basis of the amounts due on each claim. According to the apportionment, appellees were entitled to 18¾ per cent. on the $4,335.58 due them—the sum of $812.90. They received this amount as so much paid on their claims, at the same time insisting that their proportion of the fund in hand should be determined according to the full amount of the debts due to them as probated, without regard to the money received from the sale of the lands. They appealed from the order of distribution to the circuit court, which adjudged that the distribution should be made according to the contention of the appellees. From this judgment the administrator of the estate has appealed to this court.

The appellees have filed a motion to dismiss the appeal to this court, because the administrator had no right to take it.

Two questions are presented for our consideration : (1) Did the administrator have the right to appeal? (2) On what basis should the fund in the hand of the administrator have been apportioned among the creditors?

1. The right of the administrator to appeal is resisted, because he is not "a party aggrieved." He is certainly not aggrieved by the judgment appealed from in his own person ; and he is not when a claim is unlawfully allowed against the estate of his intestate and over his objections, yet he undoubtedly has the right to appeal from the allowance. In the latter case he is the representative of those who are aggrieved. As in the latter case, so he is in the former (this case), aggrieved in his fiduciary capacity.

In the apportionment by the probate court of money in the hands of an administrator, at the filing of a settlement, the creditors of the estate are not required to be brought into court for the purpose of protecting their interests. The administrator is their representative, and it is his duty to take such steps as are necessary to prevent their interests being damaged by improper orders of apportionment. They have not the same rights as are accorded to distributees by the statutes. In all proceedings for the distribution of property belonging to an estate, after its debts are paid, all the distributees are entitled to be made parties. "Each person entitled to a distributive share of any estate, and not applying for distribution, must be notified in writing of any such application at least ten days before any order of distribution can be lawfully made." Mansf. Digest, sec. 151. They have the opportunity of protecting their own rights, and the administrator is relieved of that responsibility. But it is not so in the case of creditors. The apportionment of the moneys of an estate among them is an *ex parte* proceeding, in which there is no one to represent them except the administrator. The differ-

*1. Right of administrator to appeal.*

ence in the two proceedings is suggestive of the relations sustained by the administrator to the parties named. In the former the distributees represent themselves ; in the latter the administrator is the representative of the creditors, with the right to institute and prosecute any proceeding necessary to protect their rights, among which is an appeal. *Estate of McCune*, 76 Mo. 200, 205.

2. As to apportionment of assets among creditors.

2. As to the apportionment of the assets of insolvent persons who have made assignments for the benefit of their creditors, and of insolvent estates of deceased persons, among creditors, when some of them possess mortgages or collateral securities, there is a diversity of opinion. Many courts (which, for the sake of convenience, we shall call the first class of authorities) hold that when an insolvent debtor makes an assignment for the equal benefit of persons to whom he is indebted, some of whom are secured by mortgages or otherwise, and others are not, the secured creditor is entitled to a *pro rata* dividend on the full amount of his claim, without first exhausting his securities, or deducting their value or the amounts he has received from them since the assignment was made. *Graeff's Appeal*, 79 Pa. St. 146; *Miller's Appeal*, 35 Pa. St. 481; *Miller's Estate*, 82 *id.* 113; *Patten's Appeal*, 45 *id.* 151; *Morris* v. *Olwine*, 22 *id.* 441; In re *Assignment of Buggy Co.* 89 Mich. 15; *Brown* v. *Merchants' Bank*, 79 N. C. 244; *Third Nat. Bank* v. *Haug*, 82 Mich. 607; *Citizens' Bank* v. *Kendrick*, 92 Tenn. 437; *In the matter of Bates*, 118 Ill. 524; *Kellogg* v. *Miller*, 22 Ore. 406; *Allen* v. *Danielson*, 15 R. I. 480; *Citizens' Bank* v. *Patterson*, 78 Ky. 291. The theory upon which this ruling is based by the courts so holding is correctly stated by Justice Strong in *Miller's Appeal*, 35 Pa. St. 481, as follows: "By the deed of assignment, the equitable ownership of all the assigned property passed to the creditors. They became general proprietors, and each creditor owned

such a proportional part of the whole as the debt due to him was of the aggregate of the debts. The extent of his interest was fixed by the deed of trust. It was, indeed, only equitable ; but whatever it was, he took it under the deed, and it was only as a part owner that he had any standing in court when the distribution came to be made.   *   *   *   It amounts to very little to argue that Miller's recovery of the legacy operated with precisely the same effect as if a voluntary payment had been made by the assignor after his assignment ; that is, that it extinguished the debt to the amount recovered. No doubt it did, but it is not as creditor that he is entitled to the distributive share of the trust fund. His rights are those of an *owner* by virtue of the deed of assignment. The amount of the debt as to him is important only so far as it determines the extent of his ownership. The reduction of that debt, therefore, after the creation of that trust, and after his ownership had become vested, it would seem, must be immaterial."

The same rule has been observed in the apportionment of the assets of an insolvent national bank among its creditors. In *Chemical National Bank* v. *Armstrong,* 59 Fed. 372, the court held that, when it is seized and placed in the hands of a receiver by the comptroller of the currency, the title to its assets passes, by operation of law, to the comptroller and receiver, in trust to reduce to money, and apply to the redemption of its circulating notes, and ratably distribute among its creditors ; and that each creditor, secured and unsecured, acquires an undivided interest in the assets held by the receiver, after the circulating notes are paid, which bears the ratio to the entire assets of the bank as the amount of his debt does to the entire indebtedness ; and, upon this theory, held that he is entitled to prove, and receive a dividend on, the full amount of his debt, irrespective of any collateral securities he may hold, or col-

lections thereon after the suspension of the bank on account of insolvency, "subject always to the limitation that the amount to be received by him from all sources shall not exceed his original debt and interest."

Sometimes, for the purpose of sustaining the rule we are considering, the following cases are cited : *Kellock's Case*, 3 Ch. App. Cas. 769 ; *People* v. *Remington*, 121 N. Y. 336 ; *Moses* v. *Ranlet*, 2 N. H. 488 ; *Findlay* v. *Hosmer*, 2 Conn. 350.

In *Kellock's Case*, a company was in liquidation, in chancery, under the Companies Act which was passed by the British parliament in 1862. Kellock had a claim against the company, and held a lien on certain vessels. On the 8th day of May, 1866, an order for winding up the company was made. On the 29th of June, 1866, Kellock & Co. sent in a claim to the official liquidator to rank as creditors for £31,264. In 1867 they received from the proceeds of some of the vessels £9,916, and their remaining securities, which had not been realized, were of considerable value. Their right to rank as creditors for the whole amount, without deducting their securities, was disputed. On the 28th of April, 1868, the Master of the Rolls decided that the right of a creditor holding security was to prove for the full amount of his debt as it stood at the time when the winding up order was made, deducting all moneys received from his securities before the order, but not deducting the value of any securities which were then unrealized, though they might have been realized between the date of the order and his coming in to prove. On appeal from the decision of the Master of the Rolls, it was held that Kellock & Co. were entitled to prove for the full amount due at the time when their claim was sent in, without regard to the amount realized on the securities between the sending in their claim and the time when it was adjudicated upon. Only two reasons for this decision are given : (1) The

creditor has a right to bring a personal suit against the debtor to enforce the payment of his debt, or pursue his remedies against his securities; that he is not bound to apply his securities to the payment of his claim before enforcing his direct remedies against the debtor, but can hold them until they are redeemed; and that the Companies Act of 1862 did not change these rights, and he can proceed against the estate of his debtor in the hands of the liquidator, as any unsecured creditor can do. And (2) because the 20th rule of the general order under the act of 1862 directs an advertisement fixing a time for the creditors to send the particulars of their debts or claims to the official liquidator, and appointing a day for the adjudicating thereof, holding that the adjudicating was to be upon the claim sent in, and on what was due at the time it was so presented.

Under the Companies Act of 1862, it is the duty of official liquidators of a company to take into their custody and under their control all the property, effects, and things in actions to which the company is entitled; to perform such duties in reference to the winding-up of the affairs as may be imposed upon them by the court; and, in general, to do and execute all such other things as may be necessary for winding up the affairs of the company, and distributing its assets. They hold the property in their hands as trustees for the creditors of their company. The effect of the decision in the Kellock Case, in holding that the creditor was entitled to an allowance for the amount due on his claim at the time it was sent in to the liquidators, under the 20th rule of the General Order under the Act of 1862, without regard to the collateral securities held by him, or the amounts he has realized thereon since that time, was to make him an equitable owner of an undivided interest in the assets of the company.

In *People* v. *Remington*, 121 N. Y. 328, the defendant was a corporation, and was proceeded against by the people in an action for its dissolution on the ground of insolvency. The Ilion National Bank was a creditor of the defendant to a large amount, and, as collateral security for the payment of the indebtedness to it, had received pledges of properties and securities. It made proof of the full claim. The receiver who was appointed in the case contended that there should be deducted from the proof of the claim the sums already realized by the bank from the collateral securities, and the value of the securities still held, and that the claim should be allowed for the balance only. The court held that it was entitled to prove its claim against the estate of the insolvent corporation, without regard to the collaterals it held, and to receive dividends for the amount proved. To support its decision the court cited and followed the cases which have adopted the rule which was held to be correct in *Chemical National Bank* v. *Armstrong*, 59 Fed. 372, thereby holding, in effect, that an equitable interest in the estate of the insolvent corporation vested in the bank at the time it acquired the right to prove its claim.

*Moses* v. *Ranlet*, 2 N. H. 488, and *Findlay* v. *Hosmer*, 2 Conn. 350, do not fully sustain the rule we have been considering. In those cases, creditors presented claims against the estates of deceased persons, which were secured by mortgages on the lands of the deceased. It was not pretended that any part of the sums claimed had been paid. The court held in both cases that the full amount of the claims should be allowed against the estate. Nothing was said as to what effect, if any, sums realized from the securities at any time after the death of the debtor would have on the dividends of the creditors.

There is another line of authorities, which, for convenience, we shall call the second class, which holds that secured creditors of insolvent assignors and estates of deceased persons are not entitled to dividends on the full amount of their claim.  In *Wurtz* v. *Hart*, 13 Iowa, 515, and In re *Frash*, 31 Pac. 755, it was held that when an insolvent debtor makes an assignment for the equal benefit of all persons to whom he is indebted, some of whom are secured and others are not, "the secured creditors must first exhaust their securities, apply the proceeds to the dimunition of their claims, and then share *pro rata* with the unsecured creditors on the balance of their claims."  In *Wheat* v. *Dingle*, 32 S. C. 473, this rule was enforced against a secured creditor of an insolvent estate of a deceased person.  In *Amory* v. *Francis*, 16 Mass. 308, it was held that if a creditor of an insolvent estate of a deceased person holds collateral securities for his debt, of less value than the amount of the debt, he can claim from the estate only the difference between his debt and the value of the security; and that the value of the security may be fixed by a sale of the property held as security.  This rule is based on the injustice of allowing a secured creditor to receive dividends on the full amount of his claim, for, it is said, to allow him to do so would give him a greater security than his debtor intended to give him; for, originally, the property pledged or mortgaged would have been security only for a proportion of the debt equal to its value; whereas, by proving the whole debt, and holding the pledge or mortgage for the balance, "it becomes security for as much more than its value as the dividend which may be received upon the whole debt."

There is still another class of authorities.  In *Third National Bank* v. *Lanahan*, 66 Md. 461, an assignment was made by an insolvent debtor for the equal benefit of his creditors.  One of his debts was secured by collater-

als, and was subsequently partly paid to the creditor by moneys realized from the collaterals before a dividend on the debts was made. The court held that the obligation of the trustee to pay the debt did not depend on the state of the account between the creditor and the assignor at the time of assignment, but at the time when payment was made ; and that the creditor was not entitled to a dividend on the full amount of the indebtedness, but only on that proportion which remained after deducting the moneys received from the collaterals. This rule has been enforced against secured creditors of insolvent estates of deceased persons in *Estate of McCune*, 76 Mo. 200 ; *Fields* v. *Creditors of Wheatley*, 1 Sneed, 351 ; and *Winton* v. *Eldridge*, 3 Head, 361.

As the claims of appellees were probated against the estate of Winfree for the full amount thereof, and the property conveyed in trust to secure its payment has been sold, and the net proceeds of the sale have been appropriated in part satisfaction of it, there is no question here as to how much of the claim should have been proved and allowed against the estate. The question is, were they entitled to dividends of the money in the hands of the administrator on the full amount of the claim, as proved, or on the balance remaining due after the proceeds of the sale of the land were deducted ? According to the second and third class of authorities we have cited, they were only entitled to dividends on the balance ; and, according to the first class of authorities cited, they were not entitled to them, except upon the theory they had acquired an interest in the assets of the estate of Winfree. Did they acquire such an interest? We have no statute which answers this question in express, clear, and unambiguous terms. Hence, it is necessary, not only to examine all our statutes bearing upon the subject, but to inform ourselves of the previous state of the law upon the subject, and of the mischiefs the statute to

be construed was passed to obviate.  Sedgwick on the Construction of Statutes (2 ed.) p. 202.

At common law, no creditor can become seized of an undivided equitable interest in an estate upon the death of an insolvent debtor, or the commencement of an administration upon his estate.  In certain limits, the administrator can act as freely as his intestate could have done, in the payment of debts.  If the assets are not sufficient to pay the debts in one class, he can pay to any in that degree he sees fit, unless restrained by the commencement and notice of a suit, in which event the more diligent can appropriate the estate to the exclusion of the others.  Without notice of the existence of debts of a higher, he can pay those in a lower class in preference to the former.  When the creditor recovers a judgment against him, he is not limited to any proportionate part of the estate, but can seize all the assets, and hold the administrator liable for the balance, if there be a deficiency.  If he is entitled by preference of the administrator, by the class of his debt, or by diligence in commencing his action and recovering judgment, to payment, he can take enough to satisfy his entire debt, or appropriate all the assets for that purpose if there be no excess.  There is no proportional part of an insolvent estate allotted or belonging to creditors.  There is no such part held in trust for them.  There is no provision made for them to share equally, according to class or as a body.  Each of them is entitled to enough to pay his entire debt, or all of the assets, or none, unless one or more creditors, in behalf of themselves and all other creditors, in a suit in equity, obtain a decree for an account and distribution of the assets.  2 Williams on Executors, (6 Am. ed.), bottom pp. 1033–1039.

The statutes of this State have made some changes in the common law.  They allow creditors two years after the grant of their first letters on the estate in

which to present their claims. All those presented in the first year are divided into classes as follows: First, funeral expenses; second, the expenses of the last illness, wages of servants and demands for medicines and medical attendance during the last sickness; third, judgments rendered against the deceased in his lifetime, and which were liens on the lands of the deceased if he died possessed of any; fourth, all other demands, without regard to quality, which shall be exhibited to the executor or administrator, properly authenticated. Claims exhibited within the second year are classed in the fifth class. All demands are paid in the order in which they are classed, and "no demand of one class can be paid until the claims of all previous classes are satisfied; and if there be not sufficient to pay the whole of any one class, such demands are paid in proportion to their amounts," according to an apportoinment made by the court. Secured and unsecured claims are classed and paid upon the same basis.

In regulating the rights of creditors, the statutes give ample time in which to present their claims, and provide that they shall be paid equally according to classes. They take from the administrator the right to prefer one to another. To this extent they cure defects in the common law, and provide for the greater security of creditors. The changes made are commensurate with the evils intended to be remedied. They make no change, however, as to any vested interest that each shall take in the estate. Creditors are required to present their claims for the amount due them when it is presented, and to swear "that nothing has been paid or delivered towards the satisfaction of it, except what is credited thereon, and that the sum demanded, naming it, is justly due." They may present their claims within one year and 364 days after the grant of the first letters—upon the close of the administration—but they

must make this oath before their demands can be allowed; the statute thereby showing clearly an intention that they shall not share in the assets of the estate, except upon the basis of what is actually due after all payments are deducted.    This being the manifest intention of one, it is presumed that it pervades the other statutes upon the same subject, and that when they say, "if there be not sufficient to pay the whole of one class, such demands shall be paid in proportion to their amounts," according to an apportionment made by the court, they mean, by "amounts," the sum actually due at the time of the apportionment.    When money is received from collaterals or mortgages held as security, in part payment of claims, they are certainly diminished accordingly, and their amounts become the balances due on them.    This construction was placed upon similar statutes of Missouri, in a similar case, in *Estate of McCune*, 76 Mo. 200.    In *Haskill* v. *Sevier*, 25 Ark. 152, the same construction was partially placed upon the statutes of this State.    In that case the court directed a foreclosure of a mortgage upon land which was executed by John A. Jordan, deceased, in his lifetime, to secure a debt, and directed that if the proceeds of the sale were not sufficient to pay the debt, the balance thereafter remaining should be certified to the probate court, and there classed against the estate of Jordan.

We are of the opinion that the assets of the estate of Winfree should be apportioned among the appellees and the other creditors thereof on the basis of, and according to, the amounts severally due them at the time of the apportionment.

Reversed and remanded.