### SMITH'S ESTATE.

ARNOLD *v.* SMITH.

[73 Pac. 336, 75 Pac. 133.]

APPEAL — ORDER TO SELL REALTY — WIDOW AS ADVERSE PARTY.

1. The widow is not a necessary or even a proper party to a proceeding to procure the sale of the realty of a decedent to pay debts, and her position is not affected by her being a joint maker with her deceased husband of the obligations to be paid. Not being properly in the litigation, she is in no sense an adverse party to any appeal, under Section 549, subd. 1 of B. & C. Comp.

EFFECT OF ADMINISTRATOR'S SALE ON DOWER.

2. A widow's right of dower is not affected by a sale of realty to pay debts of her deceased husband.

ORDER TO SELL REALTY—APPEALABLE INTEREST OF ADMINISTRATOR.
3. An administrator has an appealable interest in an order of a county court dismissing his petition for a license to sell property of the estate to pay a claim which has been allowed.

EVIDENCE OF RESIDENCE OF CREDITOR.
4. The evidence is satisfactory that the creditor whose claim was allowed in this case was a resident of this state when the claim became due.

BURDEN OF PROOF ON THE ENTIRE CASE.
5. Under the general rule that the party making an allegation has the burden of proof in reference to it, the objectors to an order for the sale of a decedent's realty, on the ground that the claimant was not a resident of this state when his claim matured, must prove their case, taking into account all admissions and all presumptions from conceded or established facts.

EXTENDING LIMITATIONS THROUGH PAYMENT BY JOINT MAKER.
6. Under B. & C. Comp. § 25, providing that if any payment shall be made on a contract after it has become due, the limitation shall commence from such payment, a payment by one joint maker of a note before limitation has_expired will continue the liability as to all.

STATUTES OF WASHINGTON — CLAIMS — NONINTERVENTION WILL.
7. Section 6228 of Ballinger's Ann. Codes & Stat. Wash., providing that claims not presented against an estate within one year after the first publication of the notice to creditors shall be barred, does not apply to claims against an estate settled under what is known in that state as a nonintervention will.

LACHES IN ASKING FOR SALE OF DECEDENT'S REALTY.
8. A delay of nearly ten years in procuring letters of administration and filing a petition for license to sell real estate to pay a claim against a testator's estate, the ownership or condition of the realty not having changed, and the time for the running of the statute as to realty not having elapsed, is not such laches as to bar the right to make the sale.

ESTOPPEL — ADMISSIONS IN PLEADINGS BY GUARDIANS AD LITEM.
9. An admission in a pleading must be taken as true not only on the trial of the cause in which such admission is made, but on appeal as well, whether the admission be made by a competent person or by an infant through a guardian ad litem. For instance: it being admitted in objecting to an administrator's petition for leave to sell the real property to pay claims against decedent that the only property belonging to the estate is such realty, the objectors, whether adults, or minors acting through a guardian, will not be permitted to urge on appeal an absence of proof that the personalty had been exhausted.

From Multnomah: JOHN B. CLELAND, Judge.

Proceedings for the sale of real estate of a decedent for the purpose of paying claims against the estate. From a decree of the circuit court reversing an order of the county court and directing a sale the property, the objectors appeal. A motion to dismiss the appeal was overruled, and the decree afterward affirmed, both opinions being written by Mr. Justice WOLVERTON.

MOTION OVERRULED : AFFIRMED.

## On Motion to Dismiss the Appeal.

*Mr. S. B. Huston* for the motion.

*Mr. G. C. Moser, contra.*

Mr. Justice Wolverton delivered the opinion.

This is a motion to dismiss the appeal from the decree of the circuit court reversing an order and decree of the county court of Multnomah County, and remanding the cause, with directions to grant an order of sale of the real property belonging to the estate of the deceased, for the purpose of paying a certain alleged claim against the estate and the expenses of administration. The deceased died testate in the State of Washington, leaving the following-named heirs: His widow, Annie J. Davis, *nee* Smith, and a son and daughter, named respectively, Albert U. and Ethel M. Smith, to the two latter of whom he devised the land which it is now sought to have sold by order of the probate court. The widow joined with the two children in their objections to the petition for the sale, and, being successful, the petitioner, F. K. Arnold, appealed to the circuit court, making all the objectors parties to the appeal, and succeeded in obtaining the decree from which this appeal is prosecuted. The objectors have all joined in the notice of appeal to this court, but the widow did not join in the undertaking, and the motion to dismiss is based upon the grounds (1) that there is no sufficient undertaking, and (2) that Annie J. Davis is an adverse party, but is not made a party to the appeal.

1. It is difficult to see how Mrs. Davis can be affected by a reversal of the decree appealed from, and, if she cannot, she is not an adverse party to the appeal. She is a joint maker, with the decedent, of the note, it is true; but the proceeding is not against her as such maker, but *in rem*, to subject the realty of the estate of the decedent to its pay-

ment, and no decree can be given against her in any event. It is said that, if the real estate is sold, and the proceeds applied to the payment of the demand, as required by the decree of the circuit court, it would lessen her liability, and that, therefore, a reversal will affect her adversely. Her purpose from the beginning was to defeat the sale, which is inconsistent with the idea that she would get hurt by a reversal; but, whatever part she has taken, the result of the proceedings can only affect her incidentally, and because she is a comaker of the note affords in itself no ground for making her a party to the proceedings in the first instance, and, not being a proper or necessary party thereto, she cannot be accounted an adverse party to any appeal that may be prosecuted.

2. It is further suggested that she has a dower estate in the realty sought to be sold, and for that reason she is an adverse party. That she has a dower may be assumed, unless cut off by the will or some other way ; but, concede it, the order of the court cannot affect it : *Whiteaker* v. *Belt*, 25 Or. 490 (36 Pac. 534). If she is without dower, then she has no interest whatever to be affected ; so that, in any event, she is neither a proper, necessary, or adverse party to the proceedings. This being so, the undertaking is regular, and the motion will be denied.

                              Motion Overruled.


### On the Merits.

Charles O. Smith died in Lewis County, Washington, September 15, 1891, leaving a nonintervention will and property situated in that state and Oregon. The will was admitted to probate in Washington, November 13, 1891, and W. G. Gaunce and the widow, Annie J. Smith, since married to Davis, were appointed executors. No notice to the creditors was ever published, but, notwithstanding, an

order of the court was made in the year 1898 discharging
them. On March 15, 1891, Charles O. and Annie J. Smith
executed and delivered to George F. Gibson their note for
$2,500 for money loaned, payable three years after date.
On March 12, 1896, Mrs. Davis, *nee* Smith, made a pay-
ment of $456 on the note in the following manner: Gaunce,
her coexecutor, being indebted to her in that sum, Gibson
agreed with them to take his notes for the amount, and
give credit therefor on the Smith note, which was accord-
ingly done. On May 6, 1901, F. K. Arnold, the respondent
herein, was appointed by the county court of Multnomah
County administrator with the will annexed of the estate
of Charles O. Smith in Oregon. The claim of Gibson aris-
ing upon the note in question was subsequently presented
to Arnold as such administrator, and by him allowed, and
on July 11th following he petitioned the court for a license
to sell the real property situate in such county to pay said
claim and the costs and expenses of administration. The
petition sets forth the necessary jurisdictional facts show-
ing the presentation and allowance of the claim against
the estate, that no personal property has come into the
hands of the administrator, and that the only property
belonging to the estate in Oregon is the real property, a
particular description of which is given. A citation being
issued to the heirs and devisees, Albert U. and Ethel Smith,
both minors, appeared by their guardian *ad litem*, G. C.
Moser, and answered, denying that the estate was indebted
to Gibson, and setting up the statute of limitations of Wash-
ington as a bar to the claim. The county court found in
favor of the devisees, and from the decree dismissing the
petition the administrator alone appealed to the circuit
court. A motion was there interposed to dismiss the appeal,
assigning, among other reasons, that the administrator has
not an appealable interest in the proceeding. This was
denied, and, the circuit court having rendered a decree

reversing the county court and allowing the petition granting a license to sell the real property, the devisees have appealed to this court.                    Affirmed.

For appellants there was a brief and an oral argument by *Mr. Gustavus C. Moser* and *Mr. Miller Murdoch*.

For respondent there was a brief and an oral argument by *Mr. Samuel B. Huston*.

Mr. Justice Wolverton, after stating the facts in the foregoing terms, delivered the opinion of the court.

3. The first question presented upon the record is whether the administrator had a right of appeal from the order of the county court denying his petition for a license to sell real property for the payment of the claim in question and the costs and expenses of administration. It is insisted with much force that the administrator was not aggrieved by the order or decree, and therefore had not such an interest in the controversy as would authorize him to prosecute the appeal, and that, if any right of appeal existed, it was in favor of Gibson, the creditor, and not the administrator. We said in the case of *Hume* v. *Turner*, 42 Or. 202, 208 (70 Pac. 611, 614): "It is a statutory rule that a litigant can only appeal from an order affecting a substantial right (Hill's Ann. Laws 1892, § 535), which accords with the fundamental principle, everywhere recognized, that he has no appeal unless aggrieved by the judgment or decree of the trial court." We consider the rule to be well founded, and fully substantiated by the authorities there cited; so that we have here only to determine whether the administrator had such an interest in the order that some substantial right of his, either in his personal or representative capacity, was impaired thereby. It must be premised that Gibson's claim was duly presented to the administrator, and by him allowed as a just and legal demand against the estate. As there was no

personal property out of which to provide for its payment, the law made it his duty to sell the real property. In pursuance of that duty, he petitioned for a license authorizing him to sell. The devisees are contesting his right to such license, alleging as one of the grounds therefor that Gibson's claim is not a valid demand against the estate because the statute of limitations has run against it, which, being the case, it is argued the administrator is without foundation upon which to base his application for the license. It is then urged that this is the only question to be litigated, and, whether it is decided one way or the other, it could not affect the administrator injuriously; therefore that he has no appealable interest.

The argument overlooks the basic principle that, the claim having been allowed, it was at least *prima facie* valid, and thenceforth in all auxiliary proceedings to provide for its payment the administrator represents the creditor. The law casts upon him the burden of establishing every fact necessary to maintain his application to sell, and if he fails as to one in the court of original jurisdiction it is of no more consequence to limit his right to appeal than if he fails in another. His *prima facie* case is made, so far as it is necessary that the application be based upon valid claims against the estate, when he has produced the claims duly allowed. If it is attacked in the procedure, and adjudicated to be invalid, it can be no more effective to cut off his authority to proceed further with the matter than if any other controverted fact had been decided against him; as, for instance, the insufficiency of the personal property to pay the demand. The fact in dispute as to the validity of the claim, although jurisdictional, is incidental only to the application for a license to sell, and the interest of the administrator in his representative capacity cannot be precluded by the judgment of the court of original cognizance against him upon that issue. It is said by Mr. Chief Jus-

tice Brickell in *Spence* v. *Parker*, 57 Ala. 196, 197: "It is the right of the personal representative, essential to his protection, and a duty he owes to creditors, to apply for and obtain an order for the sale of lands for the payment of debts when the necessity exists. The denial of a proper application, supported by proper evidence, is the denial of a clear legal right, as much so as the rendition of judgment of dismissal in a court of law against a plaintiff having a just cause of action, properly presented and proved." For this reason a motion to dismiss an appeal presented by the personal representative was denied. The principle finds further support in *Jamison* v. *Adler-Goldman Com. Co.* 59 Ark. 548 (28 S. W. 35); *In re Welch's Estate*, 106 Cal. 427 (39 Pac. 805); *In the Matter of the Estate of McCune*, 76 Mo. 200. So we conclude that the administrator had an appealable interest in the order denying him license to sell the real property. The order was without question final as to the administrator, as it determined his right to subject the real property to the payment of the demand in question, and precluded him from proceeding further in the premises. It follows that the motion in the circuit court to dismiss the appeal from the county court was properly denied.

4. We come now to consider whether Gibson's claim was barred by the statute of limitations. This depends primarily upon whether Gibson was a resident of the State of Washington at the time the cause of action accrued upon the note in controversy, namely, March 15, 1894. This question is mainly one of fact, to be determined from the evidence adduced at the trial. By the statute of Washington an action upon a contract of the nature here involved can only be commenced within six years after the cause of action shall have accrued: Ballinger's Ann. Codes & Stat. §§ 4796 and 4798, subd. 2. Under our statute (B. & C. Comp. § 26), when a cause of action has arisen in an-

other state between nonresidents of this state, and by the laws of that state an action cannot be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this state. This statute has received construction at the hands of this court in the case of *Crawford v. Roberts*, 8 Or. 324, and its meaning is well understood. Did the cause of action accrue between nonresidents of this state? It is admitted that Gibson was residing at Centralia, Washington, at the time the note was executed, and beyond this the evidence consists of the testimony of four witnesses, namely, Mrs. Davis, Gibson, the claimant, and Andrew and George Lewis. The latter two are brothers of Mrs. Davis, and all are cousins of Gibson. Gibson testifies, in effect, that he was residing at Centralia, Washington, at the time he made the loan to the Smiths, but that he came to this state shortly afterward, and has since made his home with Daniel Lewis, his uncle, at Russellville, Multnomah County, the most of the time; was sometimes in Washington and a while in the East; that he was living here during the year after Smith died, September 15, 1891; that after her husband died (a year or more) he stayed awhile with Mrs. Davis in Washington, and fixed a fence for her—just long enough to get her yard fixed up; that he was living at her house at the time she was married to Davis, and that from the time Smith died he had been there once in a while; that after the marriage he did not stay long, but came over to Oregon; that he was at his aunt's, Mrs. Isham's, in Washington, off and on, but not very long at a time; that he never made his home there; that he worked for Isham's son through harvest one summer before the elder Isham died. When asked where he made his home in 1891, 1892, and 1893, he could not say, but guessed it was here in 1894 and 1895. Later he was interrogated and answered as follows: "Was it not less than a year ago when Mr. Lewis, the old gen-

tleman who is dead now, made a provision for you for a home out here at his place? A. He said I could stay at his place — make my home there. Q. You have been making your home there ever since? A. Yes, and before. Q. How long before? A. Most all of the time while I was over here. Q. How many years back of that? A. Ever since I sold my place in Washington I made my home mostly here. Q. You said a little while ago you did not know where you were in 1891. A. I said when I was over here." He further testifies that he voted in Oregon seven or eight years ago; that it was at a state and county election, but did not know what one it was. On redirect he testifies that he sold his land in Washington just a while before he loaned the money; that he had been in Oregon before Smith died; that he went back and sold the place, and loaned the money to them, and came back over here, and that since that time he never called that his home over there; that he stopped with Mrs. Davis sometimes and Mrs. Isham sometimes.

George Lewis testifies that he was living with his father until 1895, since which time he has been living in the same yard; that Gibson began making his home with his father at Russellville before his brother-in-law, Smith, died in 1891, and that he has always made his home there since, except that he was away in Washington from time to time, and in later years has been in Illinois; that the witness was in Washington in 1892; that Gibson was there a little while in the summer of that year; that he stayed the rest of the year over there, first at one place and then at another, but did not stay very long at a time; that he stayed around with his aunt and uncle and his brother, visiting from place to place; that he has had his clothes at his father's ever since 1891; that he claims his father's place as his home, and has so claimed it ever since 1891; and that he never spent as much as a year in Washington at

any time after coming over here, but that he would stay over there two or three months, sometimes six, and then he would spend the rest of his time here, prior to the time he went to Illinois. Mrs. Davis testifies that in March, 1891, when the note was given, Gibson was living at her place in Centralia, Washington, just like one of her family; that he continued to reside there after that; that he was residing there in 1893 and 1894; that he came to Oregon in about 1896, and subsequently went to Illinois; that he is making his home now at her mother's place at Russellville, in this state; that before the death of her father, which occurred some time during the early summer of 1900, he told her mother to keep him there, to let him make his home there; that in 1890 he was making his home in Washington, and has continued to reside there ever since up until last year. She further testifies that Gibson spent the year after her husband's death at her house, and after he left there he made his home with his aunt on Porter Creek, in Chehalis County, Washington. On cross-examination she says that Gibson was at her house in 1891, 1892, 1893, and 1894, and came over here in 1896, and, in rebuttal, that he was there quite a long while, did a good deal of work for her; that she remarried December 14, 1892, and that he was still with her, and remained there awhile afterward; and that he went from there and made his home with her aunt, Mrs. Isham, staying there all winter, working for her.

Andrew Lewis, who lived about a quarter of a mile from his father's, testifies that he never knew of Gibson making his residence in Oregon during the years 1891, 1892, and 1893, and that it was a surprise to him when asked about the matter; that Gibson never made his home at his father's any more than going there and staying and working for him and for his brothers around there whenever he could get a job; that he never heard of his making his per-

manent home there; that he used to stop at his brother's some, and was going back and forth from Oregon to Washington, which he did a dozen times inside of the time; that he was in Russellville, Oregon, in 1893; that he went to Washington the latter part of 1893, and came back late in 1894, or early in 1895, stayed around awhile, and went back over there in 1896, and late in 1897 he went to Illinois, and stayed there until some time in May or June, 1900, when he came back here. When asked if Gibson had any permanent home in Oregon the early part of 1890 and until 1895, he answered not that he knew of; if he did, he never knew of it; that he was working for his brother in the nursery; did work for witness also; that he worked a few days grafting for witness in 1892 or 1893, and that he was in Washington the latter part of 1893 and 1894, because his aunt's husband died in 1894; that Gibson sold his land in Washington in 1890 or 1891, or somewhere along there; that his home was anywhere he saw fit to stop; that he stopped wherever he took a notion to, and that for the last 10 years he has not made his home at Russellville, but has been back and forth all the time; that he could not say whether it has been more his home than any other place.

These witnesses are all more or less indefinite in their testimony with reference to Gibson's place of residence since 1891. It is certain, however, that he was often back and forth between the two states of Oregon and Washington. Mrs. Davis is sure that he made his home in Washington until 1896, at which time she admits that he came to Oregon, and is now making his home here, having been to Illinois in the meanwhile. She says that he made his home with her from the time of the execution of the note until after her marriage with Davis, which was December 14, 1892, when he left there, and made his home at his aunt's in Chehalis County. From this time she is not specific as to his whereabouts and place of residence. She

fixes one winter that he stayed at her aunt's, but otherwise she does not presume to state definitely. Gibson, like her, is indefinite, and not altogether consistent. He says, in effect, that he came to make his home here after making the loan, and before the death of Smith, but seems to admit that he was living at Mrs. Smith's when she was married to Davis. He claims, however, that he left there shortly afterward, and came to Oregon, and that he was back again in Washington at his aunt's only, and stayed there during the harvest of one summer; otherwise that he visited with her and Mrs. Davis occasionally, and that he made his home here in Oregon. As to the relative weight of the testimony of these two witnesses, who are the most vitally concerned in this litigation, there is no appreciable difference, and one will offset the other without giving a preponderance on either side. The testimony of Andrew Lewis is of but little weight. He does not assume to know much about the matter, and what he has to say is of such a confused and uncertain character as to make it very unreliable from which to determine the fact of Gibson's residence since the year 1891.

George Lewis' testimony, upon the other hand, is much more exact and determinate, and in reality the most reliable to be found in the case. Living with his father, as he was, until 1895, and afterward in the same yard, he had a perfect opportunity for knowing whether Gibson made his home there or not, and consequently whether he resided within this state. He says distinctly that Gibson began making his home with his father at Russellville before Smith died in 1891, and has since always made his home there, except that he was away in Washington from time to time, and in later years had been in the State of Illinois. It is quite generally concurred in by all the witnesses that Gibson was in Washington in 1892, and was at Mrs. Davis' a while; but he must have left there the

latter part of the year or early in 1893, soon after she was married to Davis, and it is certain that he has not made his home with her since. He was at his aunt's, Mrs. Isham's, subsequently, and worked for her son through the harvest of one summer while her husband was living— he having died in 1893 or 1894; but it is not established that he ever made his home there, except temporarily while he was at work. He visited there off and on, but never, so far as the record indicates, to take up his residence there. We conclude, therefore, that he took up his residence here in Oregon at least as soon as the early part of 1893, and has so continued to reside here, with the exception of his absence in Illinois, and resides here now.

5. It is argued that, as it is admitted on the part of the administrator that Gibson was a resident of Washington in 1891, it must be presumed that he continued to reside there, and that, therefore, the burden of proof that he changed his residence to Oregon was upon the administrator. The question as to the residence of Gibson arises in this way : The devisees assert in their answer that the cause of action arose between nonresidents of the state, and in this, having alleged it, they have the burden of proof. The administrator merely denies the fact, without attempting to set up where the residence of Gibson was at the time the action accrued. He admits, however, that in 1891 Gibson was a resident of the State of Washington. But we do not understand that this admission has the effect to shift the burden of proof to the administrator to show that the cause of action did not arise between nonresidents of the state. The question is whether, upon all the testimony produced, taking into consideration the presumption that a residence once established will continue until otherwise shown, the devisees have made the better case. When it was admitted that Gibson's residence was in Washington in 1891, the admission made for the devi-

sees a *prima facie* case, and, while it then devolved upon the administrator to overcome this, yet in the end they must show the better case as between them and the administrator upon the question of the cause of action having arisen between nonresidents of this state : *Chaperon* v. *Portland Elec. Co.* 41 Or. 39, 47 (67 Pac. 928). While the presumption alluded to must be taken into account in determining Gibson's place of residence when the note fell due and his cause of action accrued in 1894, and since that time, yet we think, upon a careful survey of the whole testimony and the credibility to be accorded the witnesses as we go along, that the presumption has not only been overcome, but that the administrator has made the better case ; that is, that the preponderance of the evidence in the record is with him. The cause of action not having arisen between nonresidents of the state, the statute of limitations of the State of Washington was not pleadable as a bar to the note.

6. In so far as it may relate to the interposition of our own statute of limitations as a bar, an action upon the note was saved by the payment of the $456 made by Mrs. Davis theron March 12, 1896. In this state a payment by one joint maker of a promissory note before the statute of limitations has fully run will continue the liability or right of action thereon as to all, its effect being to continue the original promise: B. & C. Comp. § 25 ; *Partlow* v. *Singer*, 2 Or. 307 ; *Sutherlin* v. *Roberts*, 4 Or. 378 ; *Creighton* v. *Vincent*, 10 Or. 56 ; *Dundee Invest. Co.* v. *Horner*, 30 Or. 558 (48 Pac. 175). In this view of the fact or question as to Gibson's residence when the cause of action accrued, and the effect of the payment made by Mrs. Davis (Section 4810, Ballinger's Ann. Codes & Stat. Wash.), providing that if any person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof and the cause of action survives, an action

*43 Or.—39*

may be commenced against the representatives after the expiration of that time and within one year after the issuing of letters testamentary or of administration, can serve no purpose, and is without application.

7. Another defense is interposed, based upon a statute of Washington relating to the time of the presentation of the claim against the estate of a deceased person, which provides that, if a claim is not presented within one year after the first publication of the notice to creditors, it shall be barred : Ballinger's Ann. Codes & Stat. § 6228. But it is not shown that any notice was published requiring the creditors of the estate of Charles O. Smith to present their claims to the executors. If it had been, however, it could not help the case, as the will was of the kind known in the State of Washington as a "nonintervention will," and, where the estate is settled outside of the probate court, any notice given would not operate to bar a claim not presented within a year: See Ballinger's Ann. Codes & Stat. § 6196; *Moore* v. *Kirkman*, 19 Wash. 605 (54 Pac. 24).

8. It is next insisted, although not pleaded as a defense, that Gibson and the administrator have been guilty of such laches in not sooner applying for the appointment of an administrator in Oregon and for the license to sell the real property as to preclude them from now insisting upon subjecting such property to the payment of Gibson's demand. It is doubtful if the question is in the case as the record stands, but we will state our views concerning it briefly, without an elaborate discussion of the authorities. It is said by Mr. Moore in his article on Settlement of Decedents' Estates (19 Enc. Pl. & Prac. 819, 870) that "the right to sell is lost by delay in procuring letters of administration whenever it would be forfeited by a like delay in making application after letters granted." No hard and fast rule has ever been promulgated, so far as we are aware, defining what lapse of time in such a case will amount to

laches, and every case must necessarily be governed by its own particular facts and circumstances. One of two principles is usually applied, namely, where, on account of an unreasonable delay in applying for letters of administration or a license to sell the realty sought to be subjected to a creditor's demand, it is so changed as to ownership or physical conditions as to render it inequitable to the owner to grant the relief; or where, by analogy to the statute of limitations prescribed in the jurisdiction, barring the presentation of the claim or the right to recover the realty, the time having sufficiently run as to bar the relief in that form — the right to the relief by petition for administration and license to sell as here sought will likewise be barred: 19 Enc. Pl. & Prac. 871, 872; *Hatch* v. *Kelly*, 63 N. H. 29; *Roth* v. *Holland*, 56 Ark. 633 (20 S. W. 521, 35 Am. St. Rep. 126). Neither of these principles would seem to have application here. As to the former, it does not appear that there has been such a change in the ownership or conditions of the realty concerned as to render its subjection to the payment of the demand in question inequitable in respect to the devisees. As to the latter, no definite time is fixed by our statute for the presentation of claims to an administrator for allowance beyond which the demand will be deemed to be barred, and, in so far as the statute of limitations as it pertains to realty is concerned, it had not yet run when either the application for administration or for license to sell was made, the decedent having died September 15, 1891. So that neither the claimant nor the administrator has been guilty of such laches as will bar the right of the latter to sell the realty.

9. One other question was submitted, which was whether the administrator had sufficiently shown that the personal property had been exhausted. It is alleged by the administrator that no personal property of any kind has come into his hands, and that the only property belonging to the

estate in the State of Oregon is the real property in question. This is admitted by the objections of the devisees to the petition of the administrator, and, having so admitted this necessary jurisdictional fact for a license to sell, they cannot now be heard to say that it is not proven. The decree of the circuit court will be affirmed, and it is so ordered.

AFFIRMED