## ROTH *v.* HOLLAND.

Opinion delivered November 26, 1892.

*Administration—Application to sell land—Laches.*

Unnecessary delay for the period of more than seven years, on the part of the creditor, in procuring letters of administration to be issued upon the estate of his debtor is such laches as will defeat an application of the administrator to sell lands of the estate which had been in the possession of the deceased's heirs during that period of time.

APPEAL from White Circuit Court.

MATTHEW T. SANDERS, Judge.

*J. W. House* and *J. M. Moore* for appellant.

The application to sell is barred. 39 Ark. 116; 67

Mo. 420; 2 Gill, 348; 23 Ark. 510; 18 Ala. 307; 14 Munf. 181; 41 Iowa, 255; 49 N. H. 295; 15 Mass. 58; 16 *id.* 178; 6 Johns. Ch. 387; 8 Greenl. 220; 16 Maine, 312; 49 Miss. 500; 4 Mich. 314–15.; Woerner, Adm. p. 38 *et seq*; 55 Cal. 574; 44 Ill. 205; 23 *id.* 491; 18 *id.* 519; 7 Wheat. 60. Our court has followed the principle of these cases, that the application must be in reasonable time, but, unlike them, it has not declared any general definite rule as to what is reasonable. 37 Ark. 155; 46 *id.* 373; 47 *id.* 470. The delay and laches in this case are unreasonable.

*Sanders & Watkins* for appellee.

1. Rogers was guilty of no laches in the prosecution of his suit, or in the attempt to enforce the payment of his debt.

2. The application is not barred. 49 Ark. 248; 37 *id.* 159; 54 *id.* 66; 6 Halst. 56; 44 Ill. 203; 51 Ill. 308; Woerner, Adm. p. 1027. No limitation could run until an administrator was appointed. 51 Mo. 303; 33 Ark. 141; 38 *id.* 243.

HEMINGWAY, J. On the 1st day of July, 1887, John G. Holland, as administrator of the estate of Mary J. Watkins, deceased, presented his petition to the probate court for leave to sell a tract of land for the payment of debts. So far as the petition disclosed, there was but one claim against the estate—a judgment rendered by the circuit court of White county in favor of Thomas J. Rogers. As to it, the petition alleges that, on the 20th of January, 1870, Rogers presented to the administrator his account for the sum, including principal and interest, of $637.59; that the administrator refused to allow the account, but it was allowed, in full, by the probate court, and for $350.00 upon appeal to the circuit court; that, upon appeal to this court, the judgment was reversed and the case remanded, but that it was manifest by the opinion delivered that Rogers was entitled to

the allowance of $100.00 and interest from date of the account, and the parties agreed that a judgment for that amount should be rendered, which resulted in a judgment for $262.00 rendered by the circuit court on the 24th of January, 1884. The petition contained averments relied upon to excuse the subsequent delay in applying to sell the land.

G. C. Roth, claiming the land by mesne conveyances from the heirs at law of Mrs. Watkins, appeared in the probate court in resistance of the petition, and filed his answer thereto. The answer contained the following among other allegations : That Mrs. Watkins died in January, 1858, intestate ; that the lands passed to the possession of her heirs, and had been ever since in the exclusive possession of the heirs and those claiming under them ; that, before the death of Mrs. Watkins, Rogers brought suit upon the account against her and her husband, and recovered a judgment thereon in the circuit court ; that they took an appeal to the Supreme Court, pending which she died; that he permitted the cause against her to abate, and prosecuted it against Watkins only, and upon a trial in the Supreme Court the judgment was reversed, and the cause remanded to the circuit court; that he prosecuted the action against Watkins to a final determination in the circuit court, and it was therein adjudged in November, 1869, that he recover nothing of Watkins ; that thereupon, on the 26th of January, 1870, he presented his claim to the administrator of Mrs. Watkins, who refused to allow it, and has since prosecuted it as is alleged in the petition.

The averments of the answer show a connected chain of title from the heirs of Mrs. Watkins to Roth, and that he and those under whom he claims had been in the continuous possession of the land after her death for more than twenty-five years before the application was made.

He pleaded the seven years statute of limitations, and the laches of the administrator, in bar of the petition.

The administrator demurred to the answer, the demurrer was sustained, and the prayer of the petition granted; upon appeal to the circuit court, the same action was taken, and Roth has appealed to this court.

In the view that we have taken of the case, it has not seemed necessary to consider or pass upon the sufficiency of the matter relied upon to excuse the delay in proceeding against the land after the judgment of allowance; but we have assumed that the excuse was sufficient, and considered the case just as though the application to sell had been made immediately after the allowance. The question then is, whether the right to sell the land is barred by the continuous non-action of the creditor and possession of the heir from the death of Mrs. Watkins in January, 1858, to the presentment of the claim to the administrator in January, 1870.

The effect of the delay of the administrator after his appointment has been considered by this court in former cases; and in some of them the delay shown was held sufficient, and in others insufficient, to defeat the power. Upon their authority it may be taken as settled that the right to sell will be lost by the "gross laches" or "unreasonable delay" of the administrator in applying for leave. *Mays* v. *Rogers*, 37 Ark. 155; *Brown* v. *Hanauer*, 48 Ark. 277; *Stewart* v. *Smiley*, 46 Ark. 373; *Graves* v. *Pinchback*, 47 Ark. 471.

But we have no case in which the administrator applied for leave in apt time after his appointment, and the contention was that the power was lost by delay in taking out letters. The question is, whether such delay has the same effect to defeat the power of sale, as the delay of the administrator to apply for leave to sell.

The reason upon which the limitation is placed in the latter class of cases is, that the heirs have a right to

the indisputable possession of their inheritance as early as a just regard for creditors will permit, which precludes any unreasonable delay on part of the creditors in the assertion of their rights. 2 Woerner, Am. Law. of Adm'n, sec. 465.

But delay on part of creditors alike postpones the unconditional enjoyment of the heir and deters him from improving or selling his inheritance, whether it relates to the procuring of letters or of an order of sale; and if it is sufficient to bar the power to sell in one case, for exactly the same reason it should be in the other. Delay in taking out letters, and delay in applying to sell after they are taken out, alike keep alive uncertainty in the tenure of the heir, and are alike due to the non-action of the creditor. For, although letters are issued upon application of the administrator, it is within the power of creditors to compel administration after thirty days from the debtor's death; and if it is delayed, it is as much due to them as is the delay in applying for leave to sell. Our conclusion therefore is, that the right to sell is lost by delay in administering, whenever a like delay after administering, in proceedings to sell, would forfeit it. *Unknown Heirs of Langworthy* v. *Baker*, 23 Ill. 491; *Ricard* v. *Williams*, 7 Wheat. 116.

This leads us to consider whether the right to sell was lost by delay extending from January, 1858, when Mrs. Watkins died, until January, 1870, when the first steps looking to a sale were taken. Although the decisions of this court establish the rule that the right to sell is lost by " gross laches " or " unreasonable delay," they do not announce any uniform rule for determining what constitutes such unreasonable delay or gross laches. In the case of *Mays* v. *Rogers*, 37 Ark. *supra*, it was held that unexplained delay for ten years was unreasonable, and in later cases similar rulings have been made where the delay was longer. What considerations influenced

the ruling that ten years was too long to delay, or by what analogies the question of limitation could be decided, is not indicated. If ten years is too long, why is not seven? and what affords the reason for a distinction? Courts in considering what delay would, and what would not, bar the right, have usually applied the limitation prescribed by some statute in which it discovered analogies that were deemed sufficient to make it applicable. Thus, in some cases the statute limiting the time for presenting claims against the estates of decedents has been thought to furnish a rule; while in others the statute limiting the lien of judgments has been looked to; and in others that limiting the right of entry upon land. But it is not held that any statute can be taken to furnish a rule of limitation inflexibly controlling in all cases, and the statement is often found that what delay is reasonable must be determined by the court in its sound discretion in each case. Such is the language of this court in the case of *Mays* v. *Rogers*, 37 Ark. *supra*.

The rule, stated thus broadly, is in a state of uncertainty which must needs perplex creditors and involve titles. To relieve it entirely of uncertainty, we think could not be done or attempted with propriety; but we think a statement may be made, as applicable when there are no special circumstances to explain and palliate the delay, which does not leave it absolutely subject to the peculiar views of the judge who happens to try each case. It is expressly provided by statute that no person, except certain persons laboring under disability, shall maintain any suit in law or equity for lands, but within seven years next after his right accrued. Mansf. Dig. sec. 4471; and where the occupant holds under a tax sale or a judicial sale, a shorter time is prescribed by statute for the assertion of adverse claims. Neither of these statutes, nor any other statute, embraces within its purview the administrator's authority to sell lands; but

taken together they show that in contemplation of law seven years is deemed a sufficient time for the assertion of title to land, and that it is the policy of the law that title cannot be asserted, or the right of the occupant assailed, after a delay beyond that time. So where the occupant is a trespasser, without any other right than that by possession, and the claimant has a perfect title in law and equity, the delay of the latter to assert this title for more than seven years is deemed so unreasonable and so hostile to the public good, that the statute interposes a bar ; and certainly where the occupant is rightfully in possession, and entitled to acquire an indisputable right after creditors have enjoyed a reasonable opportunity to enforce their demands, a similar delay of the latter could not be held more reasonable or more promotive of the public good. It would certainly disclose a queer and unfortunate inconsistency in the law, if any delay which legislation has stamped as unreasonable in the one class of cases should be adjudged by the courts to be reasonable in the other class. The courts should not so adjudge the question of reasonableness as to produce such inconsistency.

Whether there is a shorter statute of limitation applicable to some other right, whose analogies would make it operative in this case we have not determined ; but we think it the manifest policy of our laws, as declared by the statutes above cited, that a delay for more than seven years is not reasonable, and therefore defeats the right of a creditor, or an administrator in his behalf, unless there is something to excuse the delay. *Ricard* v. *Williams*, 7 Wheat. 119.

In this case it was nearly twelve years from the time when the creditor might have compelled administration until he took the first step toward charging the estate. This included the time covered by the war, when delay is held to have been excusable ; but if it be excluded,

there is left a term of more than seven years during which the creditor might have compelled administration, presented his claim for allowance and applied for a sale of the land. If he had been the absolute owner of the land, and it had been occupied for that time by one without right, his delay would have barred his right of recovery; because it is deemed so unreasonable and so against public policy that a statute was enacted to effect a bar. If it be so unreasonable in the contemplation of law, as to lead to the enactment of a statute justifying the divestiture of a perfect title, it must be held so unreasonable as to bar an inferior right, which the law requires to be asserted in a reasonable time. As the right to proceed against the estate of Mrs. Watkins was always available, the fact that the creditor was seeking to make his money from her husband is no excuse for the delay.

We think the answer set up facts sufficient to defeat the application, and that the demurrer to it should have been overruled.

Reverse and remand.