MAYO *v.* MAYO.

Opinion delivered July 2, 1906.

1. EVIDENCE—WRITTEN AGREEMENT—SEPARATE ORAL AGREEMENT.— Where parties entered into a written agreement touching certain matters, parol evidence is admissible to prove a contemporaneous oral agreement concerning other matters. (Page 574.)

2. ADMINISTRATION—DELAY IN APPLYING TO SELL LAND.—Where the devisees of a testator at his death agreed that the executor should take charge of the lands of the estate and cultivate same with a view to paying off the debts, and dividing the residue among the devisees, delay thereafter for 12 years on the part of the executor and creditors in applying for an order to sell the lands of the estate to pay debts did not constitute laches. (Page 575.)

Appeal from Monroe Circuit Court; *George M. Chapline,.*
Judge; affirmed.

*Thomas & Lee, H. A. & J. R. Parker,* and *N. W. Norton,.*
for appellants.

1. Heirs, having the legal title, are not required to act in
order to protect it. They can not be kept out of their inheritance
unreasonably by the laches of creditors in subjecting the lands.
to the payment of probated claims. 73 Ark. 440; 37 Ark. 155;
47 Ark. 475; 48 Ark. 277; 54 Ark. 65; 56 Ark. 633; 63 Ark..
405; 70 Ark. 185. The alleged assignment of dower and home--
stead to Mrs. Mayo was no excuse for delay to enforce the debts.
64 Ark. 1; Kirby's Digest, §§ 2711 to 2715. See also 52 Ark.
193; 60 Ark. 461; 29 Ark. 418; 56 Ark. 532. If the executor·
and creditors had notice, they neglected their duty in failing to
defend against the proceeding; if they had none, they were not·
bound, and by showing the irregularity in the proceeding they
could have had the order quashed on ·certiorari. 52 Ark. 213.
Such an untimely assignment of homestead was held void col--
laterally. 66 Ark. 23.

2. A contract can not rest partly in parol and partly in·
writing. 29 Ark. 544, and cases cited. All the agreements, etc.,
made by the heirs at their meeting after the funeral which were·
not in writing signed by the parties were void; likewise all
former conversations, agreements and suggestions. 24 Ark. 210;·
35 Ark. 156; 21 Ark. 69.

*Manning, Moore & Bayne* and *T. K. Riddick,* for appellee.

1. The findings of fact by the court will not be disturbed if
there is evidence to support them. 60 Ark. 250; 53 Ark. 161.

2. Under the terms of the will it is plain that the testator·
earnestly desired that his debts be paid in full, and to that end
he conferred upon his executors a large discretion. In view of the·
very large indebtedness, the heirs necessarily understood that the·
attempt to pay the debts by leasing out the property involved a.
long period of time. They can not complain of delay to which
they themselves agreed. Where the executor is one of the de-
visees, he can not take advantage of the delay. 63 Ark. 405; 70·
Ark. 185.

3. The decree of the probate court allotting dower and:

homestead can not be collaterally attacked.  52 Ark. 340; 49 Ark. 397; 57 Ark. 423; 50 Ark. 188; 55 Ark. 37; 57 Ark. 49; 55 Ark. 398; Kirby's Digest § § 4424, 4425, and notes.  See also 63 Ark. 513; 80 S. W. 884; 25 Ark. 60.  The existence of the dower and homestead right was, in itself, a sufficient reason for the executor and creditors not having sold the lands covered thereby.  54 Ark. 65; 64 Ark. 1.

4.  The will creates an express trust in favor of creditors. 71 S. W. 669; 19 Am. & Eng. Enc. Law (2 Ed.), 1306 and authorities cited in note 3.

C. F. GREENLEE, Special Judge.  This is an action, commenced in December, 1902, by appellants against appellee, to recover lands which descended to them from their ancestor, W. M. Mayo, who died in October, 1890, leaving him surviving, his widow, Jane E. Mayo, and seven children—F. A. Mayo, R. D. Mayo, Laura M. Boyce (nee Mayo), Nannie J. Bond (nee Mayo), Wm. J. Mayo, Fannie M. Black (nee Mayo), and Lily M. Black (nee Mayo).

W. M. Mayo left a will, in which he said: "It is my desire that all my debts be paid as my executors may think to be the best for the interest of my estate, either by selling of my property, either personal or real estate, in the way and manner and time they may think, or by running and leasing the same at their discretion for the same purpose.  After my debts are paid, I desire one-third of my both real and personal estate property to be allotted by three commissioners to my beloved wife during her natural life; and at her death the same is to go to my children, or, if any of them be dead, to their children in the same proportion they would be entitled to; and the balance of my property, both real and personal estate property, I desire to be equally divided between my children or their children, if any of them be dead previous to the division; the same to be allotted by commissioners appointed by the judge of the probate court of Monroe County. *  *  *  And I hereby appoint my beloved sons, F. A. Mayo and R. D. Mayo, to be the executors of this, my last will and testament, and, having full and complete confidence in their integrity and capacity, I hereby declare that it is my will and desire that they shall not be required to give any security for the performance of the executorship, or [nor] shall they be required to

make any reports to any court of their transactions in the exec-
utorship, or [nor] shall any order of any court be required for
the selling or conveying of any property of mine, either real or
personal property; that they, my executors, F. A. Mayo or R. D.
Mayo, shall have full power to manage, control, bargain, sell or
convey any of my property, both real and personal property, to
pay my debts, support and educate my beloved children."

The testator was the owner of 2510 acres of land in Monroe
County, of which there were about 1100 acres cleared and in a
state of cultivation. He was heavily in debt. Claims amounting
to more than $20,000 were probated against the estate. At the
time of the death of W. M. Mayo, all his children were of age,
and the next day after his funeral said children met at the home
of the testator, and entered into a written agreement, which is
as follows:

"Be it known: That whereas W. M. Mayo departed this
life, having made his last will and testament in which he named
and appointed F. A. Mayo and R. D. Mayo his executors, without
bond or security, and whereas the said F. A. Mayo is not eligible
to the office of said executorship on account of being a non-res-
ident, and whereas, we, being the heirs at law of the said Wm.
M. Mayo, desire that the said R. D. Mayo shall qualify as sole
executor of the will of Wm. M. Mayo, and that he shall as such
executor prepare said estate for division among the heirs, we and
each of us agree and direct the said R. D. Mayo, as executor
aforesaid, to sell, exchange or dispose of the personal property
belonging to the estate in any manner he may think best, and
to purchase property in payment of debts due the estate, and at
his discretion to compromise and settle, in any way he may deem
best, all demands due the estate, and also to carry out, in any
manner he may deem best, all agreements made by his testator
with any and all his tenants and laborers, as to furnishing supplies
or otherwise, and also to purchase and sell cotton or other produce
from said tenants or laborers in payment of the claims due the
estate and sell same in any manner or place he may deem best,
and to the end of these directions and instructions we agree to
only exact ordinary diligence from the said executor aforesaid,
and we further agree to hold him liable for gross negligence in
the management of the affairs of said estate.

"Witness our hands and seals this, the 28th day of October, 1890.

> "F. A. Mayo,
> "Fannie M. Black,
> "Lilie M. Black,
> "Nannie J. Bond,
> "W. J. Mayo,
> "Laura M. Boyce."

On the same day the heirs and most of the creditors discussed among themselves the amount of the indebtedness against the estate, the value of the lands and the best method to adopt for paying the debts. Not one of them thought that the lands would sell for enough to pay the debts, and appellee stated that he desired to manage the estate as they thought best, and that he would sell, lease or "run" the lands just as they wished. The undisputed evidence was that all the heirs, without a dissenting voice, at that time agreed that appellee should not sell the lands, but that he should lease or run them and undertake to pay the debts out of the rents and profits thereof. The creditors who were present agreed to this course of conduct, and those creditors who were not present were notified of the agreement, and they consented thereto.

Within a few days after this consultation among the heirs and agreement among them for the management of the lands, appellee qualified as sole executor, took charge of the lands, and undertook to pay the debts out of the rents and profits; but, by reason of a succession of disastrous overflows, appellee did not make much more than enough to keep up necessary repairs on the place and pay the taxes. It was shown by the proof that at no time from the date that appellee took possession until the institution of this action would the lands have sold for enough to pay the debts, and that frequently and repeatedly, during all this time, appellee advised and consulted with the heirs and creditors about the management of the estate, and the heirs acquiesced fully in what he was doing.

Counsel for appellants earnestly contend that the testimony introduced by appellee to prove the agreement above referred to is incompetent, under the rule that parol testimony is inadmissible to contradict, vary or control a written agreement. The testi-

mony complained of does not in any way violate, vary, attempt to control, or even explain, the terms of the written paper. It does not affect the written paper, but relates to a different matter entirely. It relates to the course of conduct to be adopted by the executor whereby the debts of the estate could be paid, and, if possible, something be left for the heirs. The agreement was not a contract in the ordinary sense of the term, but it was an election or decision on the part of the heirs, made known to the executor, about what he should do with the lands, how he should handle them to the best interest of all concerned. They agreed that the debts should be paid by leasing, instead of selling, the lands. We are of the opinion that the trial court did not err in admitting the testimony.

The question to be determined in this case is, whether or not the executor and creditors have been guilty of such laches as to bar the right to subject the lands possessed by the testator at the time of his death to the satisfaction of debts probated against the estate.

It is settled law in this State that creditors, executors and administrators must apply for the subjection of land to the payment of debts within a reasonable time, and if, without sufficient cause, they fail to do so, their rights in that respect will be barred. *Brogan* v. *Brogan,* 63 Ark. 405; *Roth* v. *Holland,* 56 Ark. 633; *Killough* v. *Hinton,* 54 Ark. 65; *Brown* v. *Hanauer,* 48 Ark. 277; *Graves* v. *Pinchback,* 47 Ark. 475; *James* v. *Gibson,* 73 Ark. 440; *Black* v. *Robinson,* 70 Ark. 185; *Mays* v. *Rogers,* 37 Ark. 155. The reason for the rule is given in *Mays* v. *Rogers, supra,* to be that "this charge upon real estate is not a perpetual one, which may be enforced by the administrator after any lapse of time. The heirs should not be forever deterred from making improvements on the property, or prevented from selling it, by the possibility that it may be sold for the debts of the estate. The power of the administrator must be exercised in a reasonable time, and will be lost by gross laches or unreasonable delay."

In *Roth* v. *Holland, supra,* it was stated: "But we think it the manifest policy of our laws * * * that a delay for more than seven years is not reasonable, and therefore defeats the right of a creditor or an administrator in his behalf, unless there is something to excuse the delays." In this case the appellee did

not make an effort to subject the lands to sale for the payment of debts until the expiration of almost twelve years after he qualified as executor.

The circuit judge, sitting as a jury, found:

"That on or about the 28th day of October, 1890, a few days after the death of the testator, W. M. Mayo, there was a meeting of the heirs at the house of the late W. M. Mayo, at which meeting a conference was had by all of them, except Mrs. L. M. Boyce, who was represented there in that conference by her husband, W. H. Boyce; that all of the heirs were of lawful age. * * * That all the parties to that conference, as heirs and as creditors and as representatives of other creditors, agreed that it was to the best interest of the heirs, as well as the creditors, of the estate of W. M. Mayo that the property should not be sold, but that R. D. Mayo should qualify as executor, and take charge of the lands and personal property thereof, and that he should cultivate and farm the lands in the hope and belief that, by the farming and cultivation of said land, the debts might ultimately be paid, and some part or all the lands of the estate saved to the heirs. That, in pursuance of the agreement, R. D. Mayo, the defendant, took charge of the estate as executor, and cultivated and farmed the lands in controversy. * * * That frequently and repeatedly from 1890 to the date when this suit was brought, the executor talked to and consulted with the heirs as to the conduct of the affairs of the estate, and no objection or complaint was made known to the executor. That the first notice which the creditors of the estate or the executor had of any objection to the continuance of the first agreement was the institution of this action. That the executor had been managing and operating the lands of the estate under the will and the agreement aforesaid with the heirs and creditors of the estate. That, by reason of this agreement and the continuation thereof, the creditors delayed subjecting the lands to the payment of their debts. The court therefore finds that there was a reasonable cause for the delay on the part of the executor and creditors in subjecting the lands of the estate to sale to pay debts probated against said estate."

The facts found by the trial court are supported by the evidence. From the undisputed testimony in this case, we are of

the opinion that neither the creditors nor the executor have been guilty of such laches as to bar the right to subject the lands to sale for the satisfaction of debts probated against the estate of W. M. Mayo.

The judgment is therefore affirmed.