HARRY COHEN, defendant below, plaintiff in error, *vs.* SIMON
TUFF, plaintiff below, defendant in error.

1. JUDGMENT—LIENS—EXPIRATION.

The lien of a judgment, the debt secured by which is due and payable
at its date, though against the personal representative of a decedent, not
being extended by *scire facias* or otherwise within the ten years limited, by
*Rev. Code* 1852, amended to 1893, *p.* 814 (19 *Del. Laws, c.* 778), for its existence,
expires at the end of such time, and, not being thereafter revived, no longer
exists.

2. EXECUTORS AND ADMINISTRATORS—PAYMENT OF DEBTS—SALES OF REAL
ESTATE—LIMITATIONS.

Though the common-law presumption, from lapse of twenty years, that
a judgment has been paid, may be rebutted in *scire facias* proceedings insti-
tuted after the presumption has attached, and though no statute limits the
time within which an administrator may apply for and be allowed an order
to sell lands to pay judgment creditors of deceased, he will in no case be
granted an order to sell lands for payment of debts after the time limited by
statute for recovery thereon, or after the time when by the common law the
debts are presumed to be paid.

3. JUDGMENT—REVIVAL OF LIEN—PERSONS AFFECTED.

19 *Del. Laws, c.* 778, § 4, providing that when the lien of a judgment is
lost or interrupted, and it is thereafter revived by *scire facias,* it shall not
"affect any prior *bona fide* purchaser from such (in the original judgment)
defendant or terre-tenant," means a purchaser from such defendant "or from"
a terre-tenant, and so protects a purchaser from the devisee of the original
defendant.

4. EXECUTORS AND ADMINISTRATORS—PAYMENT OF DEBTS—SALES OF REAL
ESTATE—LIMITATIONS.

A *bona fide* purchaser from a devisee of a judgment defendant being,
by provision of 19 *Del. Laws, c.* 778, § 4, not "in any manner affected" by the
lien of the judgment, after being lost, being revived by *scire facias,* so that
the land cannot be reached by proceedings directly on the judgment, it for
the same reason cannot be reached by an order of the Orphans' Court to sell
lands to pay the judgment of the deceased judgment defendant.

(*April* 21, 1913.)

CURTIS, Chancellor, and CONRAD, WOOLLEY and RICE, J. J.,
sitting.

*Howell S. England* for plaintiff in error.

*Robert H. Richards* and *Aaron Finger* for defendant in error.

Supreme Court, January Term, 1913.

WRIT OF ERROR (No. 8, June Term, 1912) to the Superior
Court for New Castle County.

Action was brought in the court below (No. 70, March Term,

1912) to recover damages for breach of contract in respect to the sale of real estate and was heard upon an agreed statement of facts. Judgment was rendered for the plaintiff (3 Boyce, 404, 84 *Atl.* 946), and defendant brings error. Affirmed.

The case is stated in the opinion.

### BRIEF OF PLAINTIFF IN ERROR.

By force of *Chapter 778, Volume 19, Laws of Delaware, Revised Code*, (1893) 814, known generally as the ten-year lien law, a judgment for the payment of money ceases to be a lien upon the real estate of the defendant after the expiration of ten years from the date of its entry, or if the debt secured thereby is not due upon the date of its entry then after the expiration of ten years from the date upon which the debt of the judgment becomes wholly due and payable.

The statute provides, however, for the continuance of the lien of the judgment before it expires by the ten-year limitation, either by agreement of parties or by *scire facias* proceeding. It also provides for the renewal of the lien after the lien has been lost by the limitation above named.

The contention of plaintiff in error, under this statute, is, first, that the lien of a judgment cannot be lost by the ten-year limitation when the judgment is *recovered* in the first instance against an administrator of the decedent; and, second, if in law the lien may be lost, the judgment nevertheless remains an obligation of the deceased's estate for the payment of which the land of the deceased is always liable.

### BRIEF OF DEFENDANT IN ERROR.

This discussion in the court below, as well as in this court, involves but two questions, viz.:

(1) Whether the lien of the judgments, mentioned in the case stated, upon the real estate of the deceased has been lost by the operation of the statute known as the ten-year lien law, viz., *Revised Code* of 1893, *page* 814, being *Chapter 778, Volume 19,*

*Laws* of *Delaware*. The latest of said judgments was entered in June, 1891, and all were due at the time of entry.

This question required and was given but little consideration in the argument of the case below. The situation of said judgments is so obviously within the clear and express language of the said statute as that there can be no doubt but that, by the operation of said statute, the lien of the judgments, *qua* judgments, was lost at the expiration of ten years from the respective dates of their entry, none of them having been renewed.

(2) The second and important question is whether, notwithstanding the loss of the lien of the judgments, the real estate of the deceased is nevertheless still liable for the payment of the debts of the deceased as evidenced by said judgments.

The real estate is no longer in the hands of the heirs or devisee of the deceased. Through various conveyances, it has passed into the hands of purchasers for value. The judgments cannot be renewed so that when renewed they will be liens on the land in question. The debts (if any) are not evidenced by mortgages, recognizances, or in any other manner such as that actions to collect the debts out of the real estate could be based on record evidences of the debts themselves. Under the law of this state, therefore, as created by statute or otherwise, the only method by which the real estate in question could be subjected to the payment of the debts represented by these judgments is by an order of sale by the Orphans' Court authorizing the administrator or executor of the deceased to sell the real estate for the payment of debts. In this way only, if at all, could the real estate in question be considered liable for the payment of the debts represented by these judgments.

In this state, as well as in other American and English jurisdictions, it is elementary law that the estate of a deceased person, both personal and real, becomes bound for the payment of his debts immediately upon his decease. Indeed, it may be stated that the creditors of a decedent, immediately upon his decease, have a lien, by operation of law, upon his real estate, as well as his personalty. *Cooch's Executor v. Cooch's Administrator*, 5 *Houst.* 540, 563, 1 *Am. St. Rep.* 161; *Vincent v. Platt*, 5 *Harr.* 164, 168.

Unless the debts, however, have been reduced to such form as that action can be predicated directly upon the record of them, this lien, arising by operation of law, can only be enforced in this state by obtaining an order from the Orphans' Court authorizing the personal representative of the deceased to sell his real estate for the payment of the debts.

The debts represented by the judgments in question in this suit are now in such condition as that, if the real estate in question is still liable for them, such liability exists only by reason of the fact that a personal representative of the deceased may still obtain an order from the Orphans' Court to sell the real estate to pay the judgments.

It is respectfully submitted that this cannot be done.

This power to sell the real estate of a decedent for the payment of his debts must be exercised within a reasonable time after his death, and gross negligence, laches and delay on the part of the creditors for an unreasonable time is held to be an extinguishment of the liability of the real estate for the payment of the debts and of the power to sell the real estate for that purpose.

The courts have uniformly held that what is a reasonable time, in such circumstances, is a question of law to be determined by the court and have in most cases adopted, by analogy, the period of limitation of entry into lands, tenements or hereditaments, or some other appropriate period of limitation fixed by statute.

The court below in this case, following the unanimous opinion of the Supreme Court of the United States, as delivered by Mr. Justice Story in the case of *Ricard v. Williams et al.*, 7 *Wheat.* 61, 5 *L. Ed.* 398, adopted, by analogy, as the measure of reasonable time, the period of limitation of making entry into lands, tenements, etc., as prescribed by the statute of this state, to wit, twenty years. *Code, page* 887.

The courts in different jurisdictions, while adhering to the general principle adopted by the Supreme Court and declared by Mr. Justice Story, in *Ricard v. Williams*, have applied to the question of reasonable time different statutes of limitation, which will be disclosed by an examination of the following cases: *Gore v.*

*Brazier*, 3 *Mass.* 523, 3 *Am. Dec.* 182; *Mooers v. White*, 6 *Johns. Ch.* (*N. Y.*) 386; *Sumner v. Child*, 2 *Conn.* 607; *Wooster v. Iron Co.*, 38 *Conn.* 256; *Hatch v. Kelly*, 63 *N. H.* 29; *Porter's Lessee v. Cocke*, 7 *Tenn.* (*Peck*) 30; *Dorman v. Lane*, 6 *Ill.* (1 *Gilman*) 143; *McCoy v. Morrow*, 18 *Ill.* 519, 68 *Am. Dec.* 578; *Unknown Heirs v. Baker*, 23 *Ill.* 484; *Roth v. Holland*, 56 *Ark.* 633, 20 *S. W.* 521, 35 *Am. St. Rep.* 526; *State v. Probate Court*, 40 *Minn.* 296, 41 *N. W.* 1033.

WOOLLEY, J., delivering the opinion of the court:

This case was submitted to the court below for its opinion upon an agreed state of facts. The case as stated discloses that Simon Tuff, the plaintiff below, agreed to sell to Harry Cohen, the defendant below, a certain piece of land situate in New Castle County, State of Delaware, and to convey to him a fee simple title thereto, clear of all liens and incumbrances; that there appear upon the dockets of this court four judgments against one Joseph M. Pusey, entered either directly against him or against his personal representative, upon different dates in the years 1889, 1890 and 1891, which remain open and unsatisfied; that Joseph M. Pusey was a predecessor to the plaintiff below in the title to the lands agreed to be sold, upon which the four mentioned judgments were liens for periods of ten years each from their respective dates of entry; that the debts secured by the judgments were due and payable upon the dates upon which they were entered; that title to the land in question passed by devise from the said Joseph M. Pusey, incumbered with the liens of the said judgments, and ultimately became vested in the plaintiff below; that while letters testamentary were granted upon the estate of Joseph M. Pusey, no publication thereof was made, no inventory of the estate was filed and no account was passed by his executrix; and that as the judgments against Joseph M. Pusey were not paid out of his estate, of which the real estate in question was a part, the defendant below declined to accept title to and pay for the land as he agreed to do, upon the contention, *first*, that the land is still incumbered by the liens of the said judgments, and, *second*, that the land is still liable for the payment of the debts secured

Opinion.

thereby.   The questions of law submitted for the opinion of the court, therefore, are whether or not the said judgments are "now liens upon said lot, piece or parcel of land" and whether "the same is not liable to be taken for the payment of said judgments."

[1]   Disposing first of the question first submitted, we find that all of the judgments were entered at periods more than ten years ago, that the several debts secured by these judgments were due and payable at their respective dates of entry, that the lien of none of them has been extended by *scire facias* or otherwise within the period of ten years from its date of entry nor revived at any period thereafter, and therefore we are clearly of opinion that by virtue of the statute (*Rev. Code*, 814;   *Chapter 778, Volume 19, Laws of Delaware*) limiting the liens of judgments of certain classes to ten years and generally known as the ten-year lien law, the lien of each of these judgments was lost ten years from the date of its entry and that these judgments are not "now liens upon the said lot, piece or parcel of land" in question.

[2]   The general proposition of law involved in the second and important question is whether the real estate of a decedent may be reached in the possession of his heir or devisee or their grantees, and be subjected to the payment of his debts at all times after his decease, and if not, then within what time;   or considered with reference to the specific facts stated in this case, the question for decision is whether the particular real estate of the deceased is still liable for the payment of certain judgment debts of the deceased notwithstanding the liens thereof are lost.

To determine this question consideration must be given first to the character and legal status of the judgments upon which recovery might be attempted, and second to the procedure by which such attempt might be made.

The judgments have not only lost their liens by force of the ten-year lien law, but by force of the common-law presumption of payment after twenty years, which prevails in this state in lieu of any statute of limitation upon this class of record debts, the judgments, having been entered more than twenty years ago and the debts secured by them being more than twenty years overdue, are in law also presumed to be paid and satisfied.   This presump-

tion, however, may be rebutted in *scire facias* proceedings insti-
tuted after the presumption has attached, and if rebutted, the
judgments regain their force as judgment obligations.  While this
has not been done upon any of the judgments named, the legal
possibility of it being done still keeps alive the question of the
ultimate liability of the decedent's land for the payment of these
judgment debts.  The possible revival of the judgment obligations,
by removal of the presumption of their payment, suggests the
further question whether after such revival, the judgment credi-
tors may reach the land of the judgment debtor for the payment
of the judgment debts, either by sale thereof under an order of the
Orphans' Court for the sale of the decedent's land to pay his
debts, directed to an administrator appointed at the behest of the
judgment creditors for that purpose, or by sale of the decedent's
land in the possession of his heirs, devisees or their grantees, by
execution process issued directly on the judgments themselves.

It is a general principle of law that the estate of a decedent,
both real and personal, is liable for the payment of his debts, and
the rights of creditors therein constitute a species of lien.  In the
absence of statutory or decisional law to the contrary, of which
there is none in this state, it has been thought that resort to this
liability might be had at any time and the creditor's right thereto
extends through all time.  But the same principles of law that
recognize the existence of such a lien, and of such a liability, further
recognize that the lien may be lost or the liability discharged by
neglect to enforce the one or to resort to the other.  In this regard,
courts have applied statutes of limitation to belated procedures
either in probate courts or other courts when appropriate statutes
existed, and when none existed, as in this jurisdiction, they have
uniformly applied the rule that the procedure must be instituted
within a reasonable time, otherwise the lien is lost and the dece-
dent's land is freed.  The difficulty is in determining just what
constitutes a reasonable time within which the creditor may exert
his right and after which the decedent's land cannot be reached
in the hands of the heir or devisee.

The question seems to have arisen almost uniformly in pro-
bate courts, where, in revived administrations, applications have

been made for leave to sell lands of the decedent to pay his debts, and in those courts or in the courts reviewing their decisions the reasonableness of the time within which the application is made, has been determined by applying by analogy some statute of limitation that is deemed to be appropriate to the equities of the case. In *Ricard v. Williams*, 7 *Wheat.* 61, 5 *L. Ed.* 398, Mr. Justice Story, in delivering the opinion of the Supreme Court of the United States, described with great force and just coloring the incalculable mischiefs and the intolerable injustice of suffering a secret lien of a creditor to be called into action at any distance of time, to avoid which the court held that if the right to resort to the land of a deceased debtor is not exerted within a reasonable time, it is to be deemed waived or extinguished, and ruled that by analogy to the statute of the State of Connecticut in which state the case arose, limiting the right of entry into lands to fifteen years, an application for an order to sell lands to pay debts after that period, was made at an unreasonable time and would not be allowed. *Sumner v. Child*, 2 *Conn.* 607; *Wooster v. Iron Co.*, 38 *Conn.* 256, 260; *Porter's Lessee v. Cocke*, 7 *Tenn.* (*Peck*) 28; *Roth v. Holland*, 56 *Ark.* 633, 20 *S. W.* 521, 35 *Am. St. Rep.* 526.

The courts of other jurisdictions have held by analogy to their statutes limiting the liens of judgments to ten years, that an application for such an order made after that period is made at an unreasonable time (*McCoy v. Morrow*, 18 *Ill.* 519, 68 *Am. Dec.* 578; *Unknown Heirs v. Baker* 23 *Ill.* 484; *State v. Probate Court*, 40 *Minn.* 296, 41 *N. W.* 1033); and still others have fixed four years as the limit of a reasonable time by analogy to the statutes of those jurisdictions which limit a right of action against an administrator to four years (*Ex parte Allen*, 15 *Mass.* 58; *Smith v. Dutton*, 16 *Me.* 312; *Heath v. Wells*, 5 *Pick.* [*Mass.*] 142, 16 *Am. Dec.* 383).

Another jurisdiction, by analogy to the rules of Massachusetts and Maine, at one time limited the right to one year after the final settlement of the accounts of the administration (*Dorman v. Lane*, 6 *Ill.* [1 *Gilman*] 143); while, in New York, Chancellor Kent held that the right should be restricted to the year of administration (*Mooers v. White*, 6 *Johns. Ch.* [*N. Y.*] 360, 386, 387).

While in the absence of statutes, it is impossible to define what in every case is a reasonable time within which an administrator may apply for and obtain an order to sell lands to pay debts, certainly in any case a delay after a right of action has accrued upon a debt for the payment of which the order to sell lands is sought, for a period of time greater than the period within which, by the statute of limitations, the creditor himself might have recovered on the debt by an action at law, or a delay for a period of time greater than the period, after which, by the common-law presumption of payment, the debt is presumed to be paid, is an unreasonable delay, and an application for an order to sell the decedent's land to pay such a debt is made at an unreasonable time. If a creditor has a demand against a decedent's estate, whether it be upon a book account, upon an instrument under hand, upon an instrument under seal, or, as in this case, upon a record judgment of the class which embraces those here under consideration, for the payment of any one of which the land of the decedent is ultimately liable, and if he does not resort to one or more of the several remedies afforded him by the law to subject the decedent's land to the payment of his debt within the particular period of time limited by the statute for proceedings at law upon demands of the class in which his demand is included, or within the time, when by equally positive law, the debt is presumed to be paid, he cannot complain if the law finds that the equities of others outweigh the rights that were his, and if the law holds that the administrator of a deceased debtor is not allowed to do for the benefit of a tardy creditor, more than, under the law, the creditor can do for himself. Upon principles of plain justice, an administrator should not be "permitted to obtain an order for the sale of the real estate, as to debts which would be barred at that time by a plea of the statute of limitations; and the reason is that the heir, or other owner of the real estate, is entitled to the benefit of that plea," and an order to sell the land would deprive him of it. *Mooers v. White*, 6 *Johns. Ch.* (*N. Y.*) 360, 386.

As there is no statute in this state limiting the time within which an administrator may apply for and be allowed an order to

sell lands to pay debts to judgment creditors, we hold, if not by
analogy to the statute of this state limiting the right of entry into
lands, with respect to the principle of the application of which
Chancellor Kent in *Mooers v. White*, *supra*, disagreed with Justice
Story in *Ricard v. Williams*, *supra*, then certainly by analogy to
the common-law presumption of payment after twenty years,
which is the law of this state, that the creditors in the judgments
recited in this case, by delaying for more than twenty years to
resort to the land which was liable for the payment of their judg-
ment debts after their rights to proceed thereon in various ways
had accrued, have waited an unreasonable time and have for-
feited their right to have sold by order of Orphans' Court for the
payment of their jugdment debts, the decedent's land, whether
it be in the possession of the devisee or of her grantee.

[3, 4]   This conclusion has been reached upon broad princi-
ples applicable generally to any case where there has been a delay
in applying for an order to sell lands to pay debts for a greater
time than the time limited by statute for recovery thereupon by
actions at law, or for a time greater than that after which, by the
common law, the debts are presumed to be paid.   But it must
not be understood that the rule here stated upon general principles
is the only rule or principle governing the discretion of the court
in considering an application for an order to sell lands to pay debts,
for it may readily be conceived that circumstances of the case and
some law relating particularly to those circumstances would
greatly affect the right and shorten the time within which the order
for a sale of the decedent's lands may be made, and such, indeed,
is the situation in the case now under consideration.

In order to determine whether an executor of Joseph M. Pusey
has lost the right to obtain an order to sell the land of his deceased
defendant, for the benefit of his four judgment creditors, even
before their judgments were presumed by the lapse of twenty
years to be paid, and in order to determine with finality the ques-
tion whether the land that was a part of the estate of Joseph M.
Pusey "is not liable (now or in the future) to be taken for the
payment of said (four) judgments," it becomes necessary next to
consider the present right of the plaintiffs in the judgments to

proceed thereon to execution and sale of the defendant's land, which in the devolution of title has passed from the defendant to his devisee and through her to the plaintiff below, a *bona fide* purchaser.

To this end it becomes necessary to again advert to the legal status of the judgments.

These four judgments were entered upon different dates in the years 1889, 1890 and 1891, being dates sufficiently close to one another and sufficiently remote from the present to bring each alike under the same rules of law. They were each due and payable when entered and when entered they were each liens upon the land of Joseph M. Pusey.

At any time during ten years next following their dates of entry, the lands upon which the judgments were liens could have been sold under execution process issued thereupon, but as no resort was made to this process, and as the liens were not renewed or continued by agreement or *scire facias* proceeding within the said terms of ten years, the lien of each judgment was lost ten years after it was entered. Though the judgments had then lost their liens, which are but one of the characteristics of judgments of this class, they still remained obligations of record against Joseph M. Pusey, and continued such until upon the expiration of twenty years from their respective dates of entry, nothing in the meantime having been done to re-establish their liens or to continue their existence, they were, by force of the common-law rule, presumed to have been paid and satisfied.

This presumption of payment after twenty years, however, may be rebutted in *scire facias* proceedings thereafter instituted, and the judgments be re-established as obligations against the defendant. But would the re-establishment of these judgments as record obligations also re-establish the lost liens thereof and refasten them upon the land of the defendant in the possession of his devisee or of her grantee? That is the question.

If the land in question had remained in the possession of the devisee of the judgment debtor after the expiration of twenty years, and *scire facias* proceedings were thereafter instituted against her as terre-tenant, we hold, upon the principles of law

applied by analogy in the earlier consideration of this subject, that the liens of the judgments would not have been revived against the land in her possession, and that upon principle the judgment creditors would have had no greater right to reach the land of the decedent in her possession by execution process than by proceedings in Orphans' Court for an order to sell lands to pay debts. But it appears from the record that the devisee of the deceased judgment debtor, who by the devise became terre-tenant, alienated the land in question to a *bona fide* purchaser for value on the seventeenth day of July, 1901, at which time the liens of all the judgments had been lost by force of the ten-year lien law, the last lien being lost about a month before the conveyance. With respect to a conveyance made after a lien is lost, even while the judgment remains as an obligation, and before that obligation is presumed by the lapse of twenty years to be paid, there is a statute that establishes the law. It is provided by *Section 4, c. 778, Volume 19, Laws of Delaware*, being a section of the ten-year lien law, that "in case the lien upon real estate of any judgment for the recovery of money  *  *  *  shall be lost or interrupted  *  *  *  and the said judgment shall thereafter be revived by *scire facias*, the same when so revived shall be a lien upon the real estate of the defendant or defendants in the original judgment,  *  *  *  from the time of such revival, but such lien shall not relate back, nor shall it in any manner affect any prior *bona fide* purchaser, or mortgagee from or judgment creditor of such defendant or defendants or terre-tenant or terre-tenants."

The meaning of this provision of the law in its relation to the facts of this case, and with reference to the use of the words "or terre-tenant or terre-tenants," is that when the lien of a judgment is lost or interrupted, and it is thereafter revived by *scire facias*, it shall not "affect any prior *bona fide* purchaser  *  *  *  from such defendant," *or from* any "terre-tenant or terre-tenants." The devisee of the deceased defendant was a terre-tenant. She took the land by devise, incumbered with the liens of all four judgments. These liens had all been lost by June of 1901, and in July of 1901 she conveyed the land to a *bona fide* purchaser. If

the liens of these judgments had been revived or been attempted to be revived between the date of her conveyance and the dates at which the judgments were presumed to be paid, the liens as revived would not have reached or "in any manner affected" the land in the possession of the purchaser, who after the liens were lost and before they were revived had acquired title thereto from the terre-tenant. As the land of the deceased defendant could not thus have been reached in the possession of the *bona fide* purchaser by *scire facias* proceedings begun before the expiration of twenty years from the entry of the judgments, then clearly it cannot thereafter be reached in his possession or in the possession of his grantee; and if, because of this particular provision of the ten-year lien law, protecting *bona fide* purchasers from terre-tenants after liens are lost, the land of the deceased defendant cannot be reached by proceedings directly upon the judgments, then for the same reason it cannot be reached in Orphans' Court by an order to sell lands to pay the debts of the same judgments.

The judgment below is affirmed.