JOHN J. HOFFECKER,

*vs.*

TITUS M. D'ALONZO.

*New Castle, Feb.* 17, 1932.

*James T. Mullin,* for complainant.

*Clarence A. Southerland,* of the firm of Ward & Gray, and *Paul Leahy,* for defendant.

THE CHANCELLOR: The real estate in question is known as 809 Shipley Street, Wilmington, Delaware. It was held by Thomas Rossiter at the time of his death intestate on March 4, 1926. Rossiter left two children, a son, Raymond, and a daughter, Mary, to survive him as his only heirs at law. He was seised at the time of his death of other parcels of real estate besides the one in question. He gave two mortgages which were liens on properties other than 809 Shipley Street to secure debts evidenced by bonds. One of those mortgages was for $885.00 and was dated October 23, 1912; the other was for $5,000.00 and was dated April 19, 1920. These mortgages and the bonds secured by them are still outstanding and apparently unpaid. Since his death judgment was obtained by the mortgagee on November 15, 1929, upon a *sci. fa. sur* mortgage issued on the $5,000.00 mortgage. No *levari facias* has been issued on the judgment.

Letters of administration were taken out upon the estate of Thomas Rossiter by his son Raymond. The final account of the administrator shows that the administrator advanced sufficient funds to pay the debts filed against the estate of the deceased. The debts evidenced by the two bonds above referred to and secured by the two mortgages, however, were not filed with the administrator and are therefore not shown to have been paid by the administrator out of the personal estate.

After the death of Thomas Rossiter, a judgment in the amount of $779.48 was obtained on April 27, 1929, against Mary Rossiter and became a lien on her one-half share in all her father's real estate.

On October 30, 1929, Raymond Rossiter was adjudicated a bankrupt and a trustee of his estate was duly appointed.

On December 11, 1929, the trustee in bankruptcy, in pursuance of authority conferred on him by order of the referee in bankruptcy, instituted proceedings in the Orphans' Court for partition of the real estate of Thomas Rossiter, deceased, naming as party defendant, Raymond Rossiter, Trustee for Mary Rossiter, the co-parcener, for whom he had been appointed trustee in lunacy proceedings.

The Orphans' Court decreed a partition of the lands of the deceased and allotted, *inter alia,* 809 Shipley Street to the trustee in bankruptcy for Raymond Rossiter as and for his share in his father's real estate to be held in severalty. Certain other of the real estate was allotted to Mary Rossiter in severalty as and for her share in the father's real estate.

The complainant derives his title from a sale duly made by the trustee in bankruptcy of 809 Shipley Street, free and clear of all liens except taxes.

The foregoing are all the material details in the complainant's chain of title which the objections to title raised by the defendant make it necessary to state. These objections are:

1. The trustee in bankruptcy of one of the co-parceners had no power to institute partition proceedings, and the partition was therefore void.

2. Even if the partition proceedings were valid, the allotment of the premises in suit to Raymond Rossiter did not relieve the moiety thereof from the lien of the judgment theretofore obtained against Mary, his co-parcener.

3. Conceding the validity of the partition and allotment thereunder of the premises in suit to Raymond Rossiter to be held in severalty, yet the order of the referee in bankruptcy directing a sale of the premises free and clear of all liens and the ensuing sale were void in so far as the bond creditors of Thomas Rossiter are concerned, and the premises are subject to a liability to answer such creditors.

The foregoing epitomizes the objections to the title urged by the defendant under seven heads.

I shall refrain from discussing the points of objection above stated under 1 and 2.

The objection stated under point 3 will alone be noticed.

If that objection is a good one, there are two points that must be established to support it. These are first, that the debts evidenced by the bonds constitute liens on the lands generally which were held by Thomas Rossiter at the time of his decease; and second, the sale by the trustee in bankruptcy, undertaken to be made free and clear of all liens, did not operate as a discharge of 809 Shipley Street from the burden of those liens.

Upon the first question, the law is well settled in this State that the creditors of a decedent have a lien by operation of law upon his real estate as well as his personalty. *Vincent v. Platt,* 5 *Har.* 164; *Cooch's Ex'r. v. Cooch's Adm'r.,* 5 *Houst.* 540, 1 *Am. St. Rep.* 161; *Cohen v. Tuff,* 4 *Boyce* (27 *Del.*) 188, 86 *A.* 833, *Ann. Cas.* 1917C, 596; *Beadenkopf v. Swartz's Adm'r.,* 159 *A.* 837, recently decided by the Superior Court. In *Cohen v. Tuff,* Judge Woolley, speaking for the Supreme Court described the rights of the creditors to look to the real estate of their deceased debtor for payment as a "species of lien." The usual method of enforcing the lien is by petition in the Orphans' Court for an order to sell lands for the payment of debts, filed by the personal representative on his own motion (*Revised Code* 1915, c. 99) or on compulsion by a creditor (*Revised Code* 1915, § 3366). Whether the land of the deceased be held by his heirs or devisees or their grantees, it is equally subject to sale in such proceedings. *Cohen v. Tuff,* supra. The personal estate is the primary fund for the payment of a decedent's debts. There is no showing here, however, that the personal estate was sufficient for that purpose. That being so, there is no occasion for considering what the situation would be with respect to the rights of creditors in the instant case to look to the real estate for payment if the personalty had been sufficient.

Within what time a petition to sell lands for the pay-

ment of debts must be filed, is a matter upon which the statutory law is silent. *Cohen v. Tuff, supra,* held that it must be filed within a reasonable time after the death of the debtor. The court below in that case held that such reasonable time is to be ascertained by analogy to the periods fixed by the statute of limitations for the institution of suits. While the Supreme Court in its opinion in the same case, when it came before it on a writ of error, did not in express terms adopt the rule as to reasonableness of time thus laid down by the trial court, yet every intendment of its opinion seems to me to look in that direction. The provisions of *Section* 4316 of the· *Revised Code* 1915, which provide that real estate of a deceased person shall not be liable to be taken in execution and shall not be bound by a judgment against his executor or administrator, unless such judgment is rendered on a verdict, etc., would appear to lend force to the view that the statutory periods of limitation should be referred to as supplying by analogy the measure for reasonableness of time within which petitions to sell land for the payment of debts should be filed in the Orphans' Court; for that section recognizes the right of a creditor to obtain judgment in an independent suit at law of his own and to take the deceased's land in execution; and it must be supposed that in such suit, the appropriate period of limitation, when pleaded, would be applied by the court in bar. It would hardly be a consistent state of the law for the Orphans' Court to allow less than the statutory period of limitations to bar creditors of their right to secure a sale of the lands of a decedent to pay debts, when at the same time creditors could insist on the application of the maximum periods of limitation in the law courts in independent actions.

But whether or not the Orphans' Court would, when the question comes before it, hold that creditors could be barred of their relief to have lands sold for the payment of debts short of the statutory periods of limitation is after all not of great importance in the instant case. For here

we have specialty creditors, whose debts are not presumed to have been paid until after twenty years have elapsed. There is no statute of limitations applying to them. Only a rebuttable presumption operates against such debts. The fact that the two mortgages were standing on the records unsatisfied on March 4, 1926, when Thomas Rossiter died, as indeed they still are, raises a suggestion to any one examining the title to his land, that the bonds which the mortgages accompanied had been in all likelihood kept alive by acknowledgments of their obligations in the form of interest payments. In fact as late as November 15, 1929, a matter of a little less than a month preceding the bankruptcy sale, judgment was obtained on a *scire facias* issued on one of the mortgages, viz., the one for five thousand dollars. Only a little over six years has intervened since Rossiter's death. That length of time does not appear to me under the circumstances to be so clearly unreasonable as to warrant the view that, regardless of reference to the statutory periods of limitations for their analogy, it can be said to constitute an unreasonable delay. At all events, until the Orphans' Court has indicated by a ruling that such a delay would constitute laches, I am of the opinion that this court ought not to thrust a title on the defendant which he might in all reasonable probability be called upon to defend against the creditors of Thomas Rossiter, deceased.

The conclusion then is, under this branch of the case, that even if the presumptive period of twenty years is not too long for the speciality creditors to be barred of their rights, yet the delay shown in this case to have been indulged in is not such under the circumstances as would warrant the court in saying that there can be no successful assertion of liens by the creditors against the land in suit. If so, the court ought not to force the title upon the defendant.

This brings us finally to the question of whether the sale by the trustee in bankruptcy of the land free and clear

of all liens, was effective to discharge the possible liens in favor of Thomas Rossiter's obligees.

In the light of the authorities it cannot be successfully denied that bankruptcy courts have the power to order a sale of lands of the bankrupt free and clear of all liens. All the cases to this effect that I have examined are cases where the liens were imposed by the bankrupt. In the case *sub judice,* however, the liens were imposed by the bankrupt's predecessor in title. Whether that circumstance is of moment, is a question I have not looked into. It is unnecessary to do so. Let it be conceded to be of no significance and that the power of the bankruptcy court is as effective to sell clear of liens imposed by the bankrupt's predecessor in title as of liens imposed by the bankrupt himself, I am nevertheless of the opinion that the sale in this case was not effective to wipe out the liens. This is for the reason that the rule is well settled, that before a lienor's rights can be obliterated by a sale free and clear of them, the lienor must be brought before the court and the right to his lien secured against the proceeds. *In re Platteville Foundry & Machine Co.,* (*D. C.*) 147 *F.* 828; *In re Kohl-Hepp Brick Co.,* (*C. C. A.*) 176 *F.* 340. Numerous other cases to the same effect may be cited. See also 7 *C. J., pages* 231-233. There was no such notice in this case; neither was there any preservation of the rights of the creditors against the proceeds.

The decree will be for the defendant with costs.