THE CENTRAL NATIONAL BANK OF WILMINGTON, a Corporation of the United States of America, Assignee of Benjamin J. Schwartz, Assignee of William J. Kailunas, Assignee of Marie L. Griffith, Mortgagee, v. INDUSTRIAL TRUST COMPANY, a Corporation of the State of Delaware, and ARNOLD GOLDBERG, now known as Arnold Goldsborough, Executors under the will of Samuel Schwartz, Deceased, Mortgagor.

(*February* 11, 1947.)

CAREY, J., sitting.

*David F. Anderson* (of Southerland, Berl and Potter) for The Central National Bank of Wilmington.

*Henry A. Wise* (of Hastings, Stockly, Walz and Wise) for the Industrial Trust Company, et al., Executors of Samuel Schwartz; Frederick Wing, devisee of Hattie Wing; and Joseph Morris, Executor of Hattie Wing.

*John VanBrunt* (of Killoran and VanBrunt) for Service Block & Supply Co.

*C. Stewart Lynch* and *Daniel Herrmann* (of Lynch and Herrmann) for Francis T. Monaghan.

Superior Court for New Castle County.

Levari Facias, No. 10, September Term, 1946.

CAREY, J.

Consideration must be given first to the motion to dismiss and the petitions to amend, for a decision in favor of the purchaser on either of those matters would make unnecessary any attention to the substantive points of the controversy.

■■ The sale actually took place on July 20 but the original petitions set forth the date as July 26. This mistake is obviously immaterial because the date of sale could have been omitted entirely without invalidating the petitions. Other information therein set forth is ample to fully inform the purchaser of the nature of the proceeding and to enable him to prepare his defense. The mere fact that the petitions include affidavits does not prevent an amendment. *Wenz v. Wenz*, 6 *W. W. Harr.* 413, 177 *A.* 181. The amendments will be allowed.

■■ The second contention to be considered is the purchaser's motion to dismiss because of lack of legal interest on the part of any of the petitioners. In dealing with this particular contention, which partakes of a nature of a demurrer, it will be assumed that the real value of the property is $3000, that being the lowest value alleged by any of the petitioners. Separate and different grounds have been advanced with respect to the various petitioners; I shall therefore take them up individually. It must be kept in mind that this proceeding is not a common law form of action but is a method by which the Court may prevent abuses or injuries in the execution of its own process. *In re Adair*, 8 *W. W. Harr.* 175, 190 *A.* 105. It is simply the means whereby a person who considers himself aggrieved may call the Court's attention to some defect, irregularity,

neglect, misconduct or other sufficient matter whereby his rights have been prejudiced. The Court's jurisdiction rests upon its authority to supervise and control the carrying out of its own process. Determination of the matter therefore lies within the sound judicial discretion of the Court.

1. *Industrial Trust Company and Arnold Goldsborough, Executors of Samuel Schwartz.* It is urged that these petitioners are interested in the sale only to the extent of the balance due on the mortgage and, inasmuch as the amount bid was actually more than sufficient to pay that balance in full, they have no further interest in the matter. Their testator having conveyed the property subject only to the lien of the mortgage, they would of course not be entitled to receive any part of any surplus. There is perhaps some merit in this argument but it is unnecessary to decide it because, even if these Executors are not proper parties, their joinder in the petition cannot destroy the right of other objectants to the relief sought. See *State v. Yancy,* 61 *Mo.* 397.

2. *Frederick Wing.* The title which this petitioner received under his mother's will was and is subject to the payment of debts, funeral expenses and administration costs. His petition states that the personal assets of that estate are insufficient to pay these bills and that the real estate should have been sold through Orphans' Court to provide funds for the purpose. In the event of such a sale, Wing would be entitled to receive any surplus. Futhermore, if he should see fit, the devisee could prevent an Orphans' Court sale to pay debts by advancing the funds necessary to pay them. *Revised Code of Delaware,* 1935, Sec. 3884.

The petition is silent as to the amount of indebtedness of Hattie Wing's estate nor does it assert the value of her personalty. It is therefore impossible to discover from the petition itself whether Wing has actually suffered pecuniary

loss by the present sale even upon the basis of a $3000 valuation. Relying largely upon the rule laid down in *C. & D. Bldg. Corp. v. Griffithes,* 109 *N. J. Eq.* 319, 157 *A.* 137, the purchaser contends that the petition is fatally defective in that it shows a mere possible injury rather than an actual injury. At the same time, he points out that Wing is not a party to the original record and, upon the authority of *Moyer v. Meray,* 148 *Pa. Super.* 284, 25 *A.* 2d 612, cannot attack the sale except for collusion amounting to fraud. Much of the reasoning in the Griffithes and Moyer cases, *supra,* is not in accord with the philosophy of the Delaware cases. Whatever the rule may be in other jurisdictions, this Court has heretofore followed certain principles which are now controlling. We need not go beyond the case of *In re Adair, supra* [8 *W. W. Harr,* 175, 190 *A.* 107], Adair was a purchaser under a contract with the mortgagors, but had not paid all the purchase price when the property was sold at foreclosure sale. His contract was apparently not recorded nor was he a party to the foreclosure proceedings; yet he was allowed to come in and question the sale without making the mortgagors parties to his petition and without showing any actual damage to himself. The Court said that in most cases it would assume that injury or damage has resulted from failure to carry out some procedural requirement in the statute, but that "the application must be made by a person who was or at least could be injuriously affected by the failure of the Sheriff to comply with his statutory duties." It was enough that Adair's rights "could be injuriously affected" by failure to advertise properly.

Wing's petition does aver damage to himself because of the alleged inadequate price and alleged improper advertising. Disregarding the evidence and looking only at the averments of the petition, it is clear that his petition cannot be dismissed. It may be that the Court might deny a peti-

tioner relief where the evidence demonstrates that he could not possibly be injured. In that event, his position would be similar to that of the Executors of Samuel Schwartz in this case. However, I am not now passing upon that point but am merely saying that the allegations of his petition are sufficient to warrant the Court's consideration of the testimony.

3. *Joseph A. Morris, Executor of Hattie B. Wing.* Although the purchaser's motion and the brief filed on his behalf on the date of the hearing questioned the right of this petitioner to object to confirmation, during the hearing his counsel orally conceded that said Executor is a proper party. No further comments concerning his right are required.

4. *Service Block & Supply Co.* The claim of this objectant against Hattie Wing's estate is not a matter of record but is an unsecured claim duly probated with the Executor. It is, therefore, a species of lien against the property. *Hoffecker v. D'Alonzo,* 18 *Del. Ch.* 298, 159 *A.* 372. For present purposes, there is no distinction between its rights and those of a judgment creditor, who unquestionably can object to the confirmation of a Sheriff's sale. *In re Seaford Hardware Co.,* 3 *W. W. Harr.* 146, 132 *A.* 737; *Cochran v. Deakyne,* 2 *Marv.* 367, 43 *A.* 170. Its petition clearly shows that it could be injured by a sale for a grossly inadequate price and meets the requirements of *In re Adair, supra.*

For the foregoing reasons, the motion to dismiss is denied.

No material advantage would be gained in here reviewing all the evidence produced at the hearing. The petitioner's experts estimated a *normal* market value of $3200 to $3400. The purchaser's experts estimated a *normal* market value of $1500 to $2000. They designated the years 1939-41 as "normal." All agreed that its market value on the date of

sale was considerably in excess of those figures because of the present great demand for dwellings and consequent inflated values. On the County assessment list it is valued at $2400. On the City tax list, it is valued at $1950. The assessment figures are allegedly based upon 75 to 80 percent of true value.

It was further shown that Hattie Wing's personal estate amounts to probably $700 and that her debts, including this mortgage, amounts to about $2500.

The purchaser contends that the Court should be guided by the normal value rather than the value on the date of sale. In this connection, he cites *President and Directors of Manhattan Co. v. Premier Bldg. Corp.*, 247 *App. Div.* 297, 285 *N. Y. S.* 806; *Corn Exchange Bank Trust Co. v. Ekenberg*, 161 *Misc.* 62, 292 *N. Y. S.* 142; *Union National Bank of Pittsburgh v. Crump*, 349 *Pa.* 339, 37 *A.* 2d. 733; *Central Realty Co. v. Board of Equalization*, 110 *W. Va.* 437, 158 *S. E.* 537. I cannot agree that these cases are pertinent to the present issue. The New York and Pennsylvania cases cited deal with the rule to be followed under their moratorium acts in fixing the amount of deficiency judgments. Manifestly, any standard other than normal market value would tend to defeat the very purpose of those acts. The West Virginia case cited deals with the rule to be followed in fixing the amount of an assessment for tax purposes. There again, it is easy to see why the Court speaks of normal value as contrasted with a deflated or inflated value. No instance has been cited where such a rule was applied to a petition to set aside a sale and, if gross inadequacy exists, I can see no reason why the interested parties should not have the advantage to be gained by a resale, regardless of whether the general economic situation is normal, inflated or deflated. All of the Delaware cases on this point seem to refer to current values. In this State, I am convinced, the proper cri-

terion is the market value at the time of sale. Subject to any unusual circumstances, if that value is more than twice the sale price, there is such gross inadequacy as will shock the conscience of the Court and justify setting the sale aside. 2 *Woolley's Del. Pract.*, Par. 1121; *In re Downham Co.*, 5 *W. W. Harr.* 294, 165 *A.* 152.

True, in most of our former cases, it appears that direct testimony was produced to show that a much higher price could be obtained on resale. Such evidence is undoubtedly of material aid in proving gross inadequacy, but it is not a necessary element of proof. If gross inadequacy is established, the Court is usually justified in inferring that a resale would correct the situation. As a matter of fact, I venture to say that it would be a rate case in which the Court would find gross inadequacy to exist without at the same time finding a probability of receiving a much higher price on resale; the two are certainly very closely related.

After considering all the circumstances of this case, the details of which need not be repeated here, I am of the opinion that the premises in question have a present market value of considerably more than twice the amount bid. Under the rule mentioned above, the prayer of the petitions must be granted. Three of the petitioners, who had the real interest in preventing a sale or in making the property bring an adequate price, had no *actual* knowledge of the sale until after it was completed, although under our law there was no compulsion that they be served with actual notice. Furthermore, as the result of a conversation which took place between Wing and an employee of the mortgagee a few weeks before the sale, Wing seems to have received the understanding that he would be given time to refinance the indebtedness. Apparently his attorney was trying to arrange for this refinancing when the sale took place. These

facts probably explain the low price secured. If another sale be held, I am convinced that a much higher price can be obtained; that is to say, a price more nearly approximating its actual present market value. If that occurs, according to the evidence before me, Service Block and Supply Co. will be paid in full and in all probability there will be a surplus for Frederick Wing.

In view of the foregoing statements, it is unnecessary to discuss the other ground of objection, to wit, the alleged failure to advertise the sale properly. The rule is made absolute and the sale set aside.