**GAMLES CORP., Plaintiff Below, Appellant**

v.

**Donald J. GIBSON, Sr. and Donald J. Gibson, Jr., Defendants Below, Appellees.**

No. 96, 2007.

Supreme Court of Delaware.

Submitted: July 11, 2007.
Decided: Aug. 7, 2007.

Clark C. Kingery, Esquire, of Clark C. Kingery, P.A., Wilmington, DE, for Appellant.

Theodore F. Sandstrom, Esquire, Newark, DE, for Appellees.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice:

Gamles Corp. ("Gamles"), the Appellant, appeals from a Superior Court order granting the "Motion to Remove Judgment" of the Appellees, Donald Gibson, Sr. ("Gibson, Sr.") and his (now-deceased) son, Donald Gibson, Jr. ("Gibson, Jr.") (collectively, the "Gibsons"). Gamles claims that the Superior Court erred in four distinct respects. For the reasons discussed herein, we conclude that the Superior Court committed legal error and reverse.

### FACTS[1]

On September 11, 1990, the property that is disputed in this case, 5 Center Street, New Castle, Delaware, was sold at Sheriff's Sale to Selma Goldstein, who then assigned her interest in the property to Gibson, Jr. for $7,500. On February 20, 1991, both Gibson, Jr. and his father, Gibson, Sr., executed a $40,000 Note in favor of Selma Goldstein, who later assigned her interest in that note to Gamles.

As a result of their failure to make payments on the Note, Gamles obtained a judgment against the Gibsons on January 14, 1994. On October 21, 1996, a *fi fa* attachment was issued to Gibson, Sr.'s em-

ployer, attaching Gibson, Sr.'s wages. On February 19, 2002, Gibson, Jr. died intestate, resulting in Gibson Sr. being the sole owner of the subject property, 5 Center Street.

The writ of attachment recited that Gibson, Jr. owes a debt in the principal amount of $38,110.80, plus accrued interest of $4,335.11; and directs the employer to "continue this attachment until the amounts that the defendants owe have been paid." The record indicates that Gibson, Sr.'s employer garnished $38,536.66 of Gibson, Sr.'s wages, and that no other payment has been made since September 17, 2000.

On October 18, 2006, Gibson, Sr. filed a "Motion to Remove" the 1994 judgment on the ground that the judgment had expired, or, alternatively, had been paid in full. In response, Gamles acknowledged that the judgment lien had lapsed because Gamles did not renew the judgment lien within 10 years of its entry. Gamles argued, nonetheless, that the underlying judgment had *not* expired, and cited case law to support its contention.

The Gibsons also argued, in the alternative, that the judgment "has been paid in full." Gibson, Sr. contends that as a result of his wages being garnished in 1996, the judgment was paid in full by 2005. Gibson, Sr.'s September 2000 earnings discloses garnishments totaling $38,536.66.

In response, Gamles claimed that there remains an unpaid balance due of approximately $32,000. Gamles relied on an Account Statement, which discloses that payments received from Gibson, Sr. between September 14, 1991 and October 1, 1999 were insufficient to cover both interest and principal. As a consequence (Gamles claimed), the balance on the account grew

---

**1.** *Gamles Corp. v. Gibson,* 2007 WL 3380115 (Del.Super.).

to $52,504.38 before being reduced to $32,294.65 as of July 28, 2006.

The parties dispute how much has been paid, and what amount remains to be paid, to satisfy the judgment. Gamles claims that as of July 28, 2006, Gibson, Sr. still owes $32,294.65. Gibson, Sr. claims that from 1991 to 2007 he paid a total of $94,123.74 on Gamles' Note, and that therefore, the January 14, 1994 judgment was paid in full.[2] Gamles responded that the only sworn evidence before the trial court on this issue was the Statement of Account provided by Gamles, showing receipt of $70,657.47—$23,466.27 less than the sum claimed to have been paid by Gibson, Sr. No evidentiary hearing was held to determine whether the judgment was satisfied by way of payment, nor did the Superior Court rule on that issue.

By Order dated January 29, 2007, the Gibsons' Motion To Remove Judgment was granted, and Gamles' wage attachment was terminated. The basis of that Order was the Superior Court's ruling that the judgment had expired, and as a consequence, so had the wage attachment. On February 5, 2007, the Superior Court amended its Order to direct Gibson, Sr.'s employer to "return all monies that came into [its] possession after the judgment expired on January 14, 2004...."[3] On February 5, 2007, the trial judge directed Gamles to return to Gibson, Sr., or place in escrow with the Prothonotary, all monies collected since January 14, 2004.

Gamles has appealed from the foregoing Superior Court's orders. Gamles claims that the Superior Court erred in: (1) concluding that the judgment expired in January 14, 2004 under 10 *Del. C.* § 4711; (2) holding that the wage attachment did not survive the expiration of the underlying judgment; (3) finding that Gibson, Sr. had made no payment since 2000; and (4) ordering the return of wage attachment proceeds received after January 14, 2004. Those contentions generate the four issues that are next addressed.

## *ANALYSIS*

### I. *The 1994 Judgment Expiration Claim*

Gamles first claims that the Superior Court erred as a matter of law by holding that the judgment had expired on January 14, 2004 under 10 *Del. C.* § 4711. We review questions of law *de novo*.[4]

The Superior Court determined that "because [Gamles] did not renew the judgment within 10 years of entry, the January 13, 1994 judgment has, therefore, expired by force of 10 *Del. C.* § 4711."[5] Gamles does not dispute that it did not renew, or seek to enforce, its lien of judgment upon the Gibsons' real estate. Gamles also acknowledges that its lien of judgment expired under 10 *Del. C.* § 4711. What Gamles claims, however, is that the underlying judgment itself did *not* expire under that provision.

10 *Del. C.* § 4711 provides, in pertinent part, that:

> No judgment for the recovery of money entered or recorded in the Superior Court ... shall continue *a lien upon real estate* for a longer term than 10 years next following the day of entry or recording of such judgment ... unless,

---

2. *Id.* at *1.

3. *Gamles Corp. v. Gibson,* 2007 WL 3380115 at *2 (Del.Super.).

4. *Plummer v. Sherman,* 861 A.2d 1238, 1242 (Del.2004), citing *Moss v. Prudential–Bache Secs., Inc.,* 581 A.2d 1138, 1140 (Del.2004).

5. *Gamles Corp. v. Gibson,* 2007 WL 3380115, at *2 (Del.Super.).

within the term of 10 years, the lien of such judgment is renewed and continued.... [6]

Gamles claims that 10 *Del. C.* § 4711 does not apply because Gamles is not pursuing a lien upon real estate. Rather, it is pursuing an action to collect on a judgment by way of wage attachment. Therefore (Gamles argues), the Superior Court misinterpreted a "lien of judgment upon real estate" as being the legal equivalent of a "judgment," thereby leading to an erroneous conclusion that, absent a renewal, Section 4711 limits the duration of a judgment to 10 years.

Section 4711 is part of the "10 year lien" law that was originally enacted in 1893 and is now codified at Title 10, Subchapter I, *Lien of Judgments.* Under 25 *Del. C.* § 2718(a), Gamles obtained a judgment lien on the Gibsons' real estate when Gamles' judgment was entered in 1994.[7] Under Section 4711, Gamles' money judgment ceased to operate as a lien upon the Gibsons' real estate after the expiration of 10 years from the date of the judgment's entry. In this case, however, Gamles is pursuing a wage attachment, not a *lien* on real estate. The issue thus becomes whether the underlying 1994 *judgment* expired after 10 years from its entry by operation of 10 *Del. C.* § 4711.

Section 4711 provides only that a *judgment lien upon real estate* will expire unless it is renewed within 10 years after its entry. The statute does not say that the underlying judgment will similarly expire. In *Cohen v. Tuff*,[8] this Court reviewed the 10-year lien law in an action to execute against real estate that had been conveyed to a bona fide purchaser after the judgment liens on the property allegedly expired. We held that, although the judgments had then lost their liens by force of the 10-year lien law, the judgments still remained obligations of record, and continued as such until upon the expiration of twenty years from their respective dates of entry. After that, the judgments were, "by force of the common-law rule, presumed to have been paid and satisfied." [9]

■■■ Delaware has no statute of limitations governing judgments or actions on judgments.[10] There is only a rebuttable common law presumption of payment after twenty years.[11] In this case, even that common law presumption of payment did not arise, because the judgment was only 13 years old at the time this action was filed.

We conclude, for these reasons, that the Superior Court erred as a matter of law in holding that Gamles' January 14, 2004

---

6. 10 *Del. C.* § 4711 (1999) (emphasis added). The statute then proceeds to describe the mechanics of renewing the lien.

7. Delaware Code, Title 10, Subchapter I does not define the term "lien of judgment." That term is defined in Title 25, *Property,* Chapter II, *Enforcement in Superior Court,* Section 2718, *Lien of judgments,* which states that: "[a]ny judgment obtained under a claim made in accordance with this subchapter shall become a lien upon such structure and upon the ground upon which the same is situated, erected or constructed...." 25 *Del. C.* § 2718(a) (1989).

8. 27 Del. 188, 86 A. 833 (Del.1913). At that time, the 10-year lien law was codified in

Chapter 778, Volume 19, Laws of Delaware, Revised Code (1893) 814, which stated that a judgment for the payment of money ceases to be a lien upon the real estate of the defendant after the expiration of 10 years from the date of its entry. *Id.* at 198, 86 A. 833.

9. *Id.* at 198, 86 A. 833.

10. *Guayaquil & Quito Ry. Co. v. Suydam Holding Corp.,* 132 A.2d 60, 66 (Del.1957).

11. *Farmers Bank of Delaware ex rel. Conte v. Conte,* 1981 Del.Super. Lexis 756, at *6 (Del.Super.Jan. 23, 1981).

judgment had expired by reason of 10 *Del. C.* § 4711.

## II. *The Wage Attachment Claim*

Gamles next claims that the Superior Court erroneously held that the wage attachment had terminated as a consequence of the judgment having expired. That claim presents a question of law that this Court reviews *de novo.*[12]

The Superior Court terminated Gamles' wage attachment after finding that Gamles' 1994 judgment had expired under 10 *Del. C.* § 4711, on the basis that the attachment proceedings "rely on the validity of the underlying judgment."[13] As we have held above, the judgment did not expire by operation of 10 *Del. C.* § 4711. Therefore, the wage attachment brought to execute on the judgment did not terminate either.

■ The Gibsons respond that the wage attachment must be construed as a "general lien" and, as such, expired under a 1955 amendment to 10 *Del. C.* § 4711. That 1955 amendment relevantly provides as follows:

No *judgment which is a general lien,* including judgments for costs and judgments in favor of the State or any political subdivision thereof, shall remain a lien for more than the 10 year period hereinabove provided, unless renewed for a further 10 year term in accordance with the provisions of the section.[14]

The Gibsons claim that through the 1955 amendment, the Delaware Legislature expanded "the scope and application of § 4711" to include all judgments that operate not only as liens on real estate but also as liens for all purposes. Therefore, Gam-les' wage attachment, which is a "general lien," was required to be renewed within 10 years, and because it was not, the wage attachment expired.

The Gibsons' argument fails under 10 *Del. C.* § 4716, which carves out an exception to Section 4711. Section 4716(a) provides that:

The provisions of this subchapter shall not operate to defeat the due enforcement of any writ of execution under any judgment for the recovery of money entered or recorded in the Superior Court, *by virtue of which real estate is seized or taken,* if such writ of execution is issued before the expiration of the said term of ten years. They shall not apply to any judgment upon a mortgage or mechanics lien.[15]

Gamles argues that the first sentence of Section 4716(a) precludes Section 4711 from operating to defeat its wage attachment, because the wage attachment is a "writ of execution" that was filed within the 10–year statutory period. We agree with Gamles' conclusion, although not its reasoning. Strictly speaking, the first sentence of Section 4716(a) states that the 10–year limitation does not apply to defeat enforcement of execution writs issued before the expiration of the 10–year period "by virtue of which real estate is seized or taken." Gamles' attachment was upon the *wages* of Gibson, Sr. It was not upon a writ of execution "by virtue of which real estate is seized or taken."[16] Therefore, the first sentence of Section 4716 does not apply.

But, the second sentence of Section 4716(a) further provides that "[the provisions of this Chapter] shall not apply to

---

12. *Plummer, supra,* 861 A.2d at 1242.

13. *Id.*

14. 10 *Del. C.* § 4711 (emphasis added).

15. 10 *Del. C.* § 4716 (1999) (emphasis added).

16. *Id.*

any judgment upon a mortgage or mechanics lien." [17] That is, if the underlying judgment is based upon a mortgage, then the 10–year limitation period does not apply to that judgment. Here, Gamles' 1994 judgment was obtained as a result of Gibson, Jr.'s default on a mortgage loan to finance the purchase of a house. Thus, Gamles' judgment was upon a mortgage, and under Section 4716, is exempt from the 10–year limitations period. As a result, the wage attachment was not affected by the operation of 10 *Del. C.* § 4711 and did not terminate.

We conclude, for those reasons, that the Superior Court erred in ordering the termination of Gamles' wage attachment.

### III. *The "Erroneous Factual Finding" Claim*

 Gamles next claims that the Superior Court erred in finding that Gibson Sr.'s employer had made no payment responsive to the wage attachment since 2000. As we have noted, "[i]n a nonjury case in which a Superior Court Judge sits as the finder of fact, an appeal from this decision is upon both the law and the facts." [18] "In such an appeal this Court has the authority to review the entire record and to make its own findings of fact in a proper case." [19] We will not disturb the Superior Court's factual findings if they are sufficiently supported by the record and are the product of an orderly and logical reasoning process.[20]

The Superior Court found that Gibson Sr.'s "employer stopped payment in 2000," and that Gamles "failed to take advantage of legal remedies available to it in order to recover the remaining balance." Specifically, for four years Gamles "neglected" "either [to] seek enforcement of the writ and/or renew judgment against [the Gibsons]" [21] as interest continued to accrue on the debt. That being the case, the Superior Court determined that it "cannot now order [the Gibsons] to pay interest that has accrued since [Gamles'] failure to actively enforce the judgment." [22]

The finding that Gibson, Sr. ceased making payments after 2000 is factually erroneous, and the Gibsons so concede. In his brief, Gibson, Sr. represents that his wages "continued to be garnished from 2000 to 2006 for a total of $45, 225.20 and briefly in 2007 for $658.88." In addition, Gibson, Sr. "made $9,703.00 in direct payments."

Thus, no factual basis existed for the Superior Court's conclusion that it "cannot now order [the Gibsons] to pay interest that has accrued since [Gamles] [failed] to actively enforce the judgment." That conclusion rests on the incorrect finding that Gibson, Sr.'s employer stopped payment in 2000, and that Gamles had "neglected" to seek enforcement of and/or renew the judgment against Gibson, Sr.

Because the Superior Court's factual finding in that regard is not supported by the record, it must be overturned.

### IV. *The Return of Wage Attachment Claim*

 Lastly, Gamles claims that the Superior Court erred as a matter of law in its February 2, 2007 amended Order, which directed Gibson, Sr.'s employer as well as

---

17. *Id.*

18. *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del. 1972), citing *Dupont v. Dupont,* 216 A.2d 674 (Del.1966).

19. *Id.*

20. *Id.*

21. *Id.*

22. *Id.*

Gamles' officer, Steven M. Goldstein, to return to Gibson, Sr. all wage attachment proceeds received after January 14, 2004. We review questions of law *de novo*.[23]

On February 2, 2007, the Superior Court entered an Order providing that Gibson, Sr.'s employer, Ogborne Waste Removal, "shall return all monies that came into their possession after the judgment expired on January 14, 2004, to Donald J. Gibson, Sr." Gamles claims that because Gibson, Sr. continues to owe it "a significant debt and judgment balance, ... it would be manifestly unfair to cause a judgment creditor to refund monies received by way of legitimate and long accepted execution proceeding while such debt remains unpaid."

The Superior Court Order directing Gamles to refund to Gibson, Sr. monies received after 2004, rests on the erroneous conclusion that Gamles' wage attachment did not survive the expiration of the underlying judgment. As discussed above, the underlying judgment did survive, and so did the wage attachment. Therefore, the Gibsons remain liable under the 1994 judgment, and Gamles remains entitled to collect the unpaid balance due under Gibson, Sr.'s wage attachment.

The Gibsons acknowledge that the Superior Court "did not find the judgment had been paid in full" and that the court "[erred] in finding the employer stopped payment in 2000." The Gibsons claim, nonetheless, that the judgment entered on January 14, 2004 has been "paid in full and should be satisfied of record."[24] The difficulty is that the parties dispute how much has been paid, and how much remains to be paid, to satisfy the judgment. Because the Superior Court decided only what it

deemed to be "[t]he sole issue ... whether a wage attachment survive[s] expiration of a judgment,"[25] the court did not reach the question of whether the balance of the judgment had been paid, and if not, what unpaid balance remains.

Because the issues of payment and balance due are critical to resolving this case, but are not the subject of any determinations by the Superior Court, those issues are not properly before us for review.[26] Those issues must be determined by the trial court in the first instance.

## *CONCLUSION*

For the foregoing reasons, the judgment of the Superior Court is reversed and the case is remanded for further proceedings consistent with this Opinion.

---

**23.** *Plummer, supra,* 861 A.2d at 1242.

**24.** *Id.*

**25.** *Gamles Corp. v. Gibson,* 2007 WL 3380115, at *2 (Del.Super.).

**26.** Del. Sup.Ct. R. 8.